## SHAWNEE NAT. BANK v. VAN ZANT.

No. 11088—Opinion Filed Oct. 11, 1921.

Rehearing Denied Dec. 13, 1921.

(Syllabus.)

1. **Appeal and Error — Case-Made—Extension of Time—Authority of Judges.**

A district judge, who has been assigned by order of the Chief Justice to hold court in a county outside of the district in which he is elected, has no authority, after the expiration of the time fixed in the order assigning him to hold court in said county, to grant an extenson of time in which to prepare and serve case-made, in a case tried before him while lawfully holding court in such county, and although the regular judge in said district has certified his disqualification to try said case on the merits, he may

grant an extension of time in which to prepare and serve case-made.

2. **Executors and Administrators—"Executor De Son Tort"—Validation of Acts.**

Where a person takes charge of the property of the deceased, and proceeds to administer upon the same, he becomes what is termed an "executor de son tort," and if thereafter he is appointed administrator, the general rule is, and especially where said party is an heir, that the subsequent grant of letters testamentary relates back to the death of the intestate, and makes valid the acts of the executor de son tort.

3. **Same—Grant of Letters of Administration—Right to Avoid Prior Acts.**

The general rule is that grant of letters' of administration relates back to the date of the death of intestate, and legalizes all intermediate acts of the administrator, and such administrator cannot by suit, in the absence of fraud, avoid acts done by him, or recover property transferred by him after such death, and before his appointment, nor if he has received the purchase price, thereafter recover the value of said property transferred by him before such appointment.

4. **Same — Action by Administrator for Double the Value of Property Alienated—Right to Set-off for Payments on Debts of Estate.**

In an action by an administrator to recover double the value of certain property alienated by defendant as provided in section 6324, Rev. Laws 1910, when the evidence discloses that the property was delivered to the defendant by the administrator before being appointed, and defendant sold the property and delivered the proceeds to the plaintiff, which was used by her in the payment of debts of the deceased, held, error to refuse a requested instruction to the effect that the defendant was entitled to plead as an offset the amount of such proceeds used in paying the legitimate debts against said estate.

5. **Same—Applicability of Statute—Quaere.**

Quaere: Whether an executor de son tort, who takes charge of an estate and delivers the property to a third person for the purpose of sale, and the third party sells such property and delivers the proceeds to the executor de son tort, who in turn applies the money to the payment of debts against said estate—whether said acts constituted an embezzlement or alienation of the property within the meaning of section 6324, Rev. Laws 1910, is not decided.

6. **Executors and Administrators — Administrator's Right to Possession of Personalty.**

Under the law of this state, the administrator is entitled to possession of the personal property from the date of the death of the deceased until it is disposed of in the course of administration.

**7. Same—Payments by Executor De Son Tort of Unsecured Debts by Checks—Liability of Bank.**

In an action by an administrator against a bank, where it is alleged that the plaintiff, prior to the time of being appointed administratrix, received $12,000 life insurance in her own name and turned the same over to the bank with the agreement that the bank should pay the secured debts against the estate out of said funds, and the evidence disclosed that said funds were deposited to the credit of the plaintiff, and she issued checks payable to third parties in payment of claims against said estate, and paid certain debts that were not secured, held, the bank would not be liable for unsecured debts paid by plaintiff by check upon the bank to third persons.

**8. Homestead—Right of Surviving Wife to Mortgage—Possessory Rights of Minor Children.**

The surviving wife may mortgage her interest in the homestead, although the mortgagee or purchaser at the mortgage sale would have no right to possession of any part of the homestead during the minority of any of the children.

Error from District Court, Pottawatomie County; James I. Phelps, Assigned Judge.

Action by Sarah F. Van Zant, administratrix of the estate of R. E. L. Van Zant, deceased, against the Shawnee National Bank to recover for alleged illegal disposition of certain property of the estate. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Abernathy & Howell, for plaintiff in error.

Goode & Dierker, for defendant in error.

McNEILL, J. This is an appeal by the Shawnee National Bank from a judgment rendered against it in the district court of Pottawatomie county in favor of Sarah F. Van Zant, administratrix of the estate of R. E. L. Van Zant, deceased.

The defendant in error filed a motion to dismiss the appeal for the reason the regular judge of the 10th judicial district had certified his disqualifications to try the case upon its merits and James I. Phelps, one of the regular judges of the 13th judicial district, was assigned to hold court in said district, and tried the above entitled case, and at the time of overruling the motion for new trial extended the time in which to make and serve case-made. The case-made was not prepared and served within the time allowed by the trial judge, and an application was made to the regular judge for an extension of time in which to serve the case made, and several extensions were granted by the regular judge and the case-made

served within the extension made by the regular judge. This court overruled the motion to dismiss the appeal without writing an opinion. Defendant in error made application to refile the motion to dismiss, and the same was again considered by this court and denied without writing an opinion. Defendant in error again presents the motion to dismiss the appeal for the reason the order of extension made by the regular judge to make and serve a case-made was a nullity, as said judge was disqualified in the case and had so certified his disqualifications. This court, in the case of Rogers, County Treasurer, v. Bass & Harbour Co., 47 Okla. 786, 150 Pac. 706, passed upon this identical question. In that case, under almost identically the same circumstances, this court overruled the motion to dismiss. The opinion was rendered in July, 1915, and the same has been recognized by the bench and bar of this state as the law applicable in cases of that kind and has been consistently followed by this court since said date. We do not feel that the opinion should be disturbed at this time.

Counsel for defendant in error insists that the case of Cain v. King, 49 Okla. 596, 153 Pac. 1133, overruled the case of Rogers v. Bass & Harbour Co., supra. In this, counsel is in error, and a reading of the facts in the case discloses that it does not overrule the case, but supports the rule announced in the case of Rogers v. Bass & Harbour Co. The record in the case of Cain v. King discloses the case was pending in the county court and was tried before a judge pro tempore, or special judge. Article 7, sec. 12, of the Constitution provides for the election of a judge pro tempore in the county court to try the case when the regular judge is disqualified. The judge pro tempore tried the case, and on August 21st, rendered judgment and granted an extension of time of 40 days in which to prepare and serve case-made and ten days to suggest amendments, the same to be signed and settled, on five days' notice. The case-made was not prepared and served within said time, but within the time, to wit, on September 26, 1913, the regular county judge extended the time to make and serve case-made to and exclusive of October 15 1913, and the case-made was served October 11, 1913, and was signed and settled November 12, 1913. The defendant in error filed a motion to dismiss the appeal for the reason the case was signed and settled after the time allowed in the original order, and the judge pro tempore after said date was without jurisdiction to sign and settle the case-made. It was contended that the office of

the judge pro tempore expired 15 days after October 15th, ten days of which was granted to defendant in error to suggest amendments and five days for plaintiff in error to give notice of signing and settling, which would make the time expire October 31, 1913, and if not signed and settled on that date, the court was without jurisdiction. The case was not signed and settled until November 12, 1913, and in support of the motion to dismiss the parties relied upon the case of City of Shawnee v. State Pub. Co., 33 Okla. 363, 125 Pac. 462, and cases following that decision where this court had announced the rule as follows:

"Where no time has been fixed either by order of court or by notice given by the parties within the time for serving a case and suggesting amendments thereto for settling a case, the authority or term of a judge pro tempore ceases upon the expiration of the time fixed for suggesting amendments, and a case-made settled by him after that time is a nullity."

That was the only question before the court in the case of Cain v King, supra; the former holdings of this court on that question were overruled. The rule announced in the case of Cain v. King stated in the syllabus was as follows:

"A judge pro tempore may, in a case tried before him, at any time within six months from the date of the judgment appealed from, sign and settle same where served within the time fixed by statute or any lawful order of extension."

This authorized the judge pro tempore to sign and settle the case-made any time within six months after the judgment, provided, however, of course, that the case-made was served within the time fixed by the order of the judge pro tempore who tried the case or the extensions granted by the regular judge. Whether the regular judge in the case of Cain v. King was disqualified does not appear from the record, but the only provision for electing a temporary judge is when the county judge is disqualified. The facts disclosed that the regular county judge signed the order extending the time in which to prepare the case-made, and this court refused to dismiss the appeal. Mr. Justice Hardy wrote the opinion in Rogers v. Bass & Harbour Co., and also wrote the opinion in the case of Cain v. King, and also wrote the opinion in the case of First State Bank of Mountain Park v. School District No. 65, Tillman Co., 63 Okla. 233, 164 Pac. 102, wherein the court stated as follows:

"A district judge, who has been assigned by order of the Chief Justice to hold court in a county outside of the district in which he is elected, has no authority, after the expiration of the time fixed in the order assigning him to hold court in said county, to grant an extension of time in which to prepare and serve case-made, in a case tried before him while lawfully holding court in such county."

There is no conflict in these decisions. This court is committed to the following principle of law, to wit:

First: After a special judge or judge pro tempore has overruled a motion for a new trial, or rendered judgment, if he fixes the time to make and serve case-made, he has no power thereafter to extend the time to make and serve case-made, and when he attempts to do so, his act is a nullity. McGuire v. McGuire, 78 Okla. 164, 189 Pac. 193; Bradley v. Farmers' State Bank, 45 Okla. 763, 147 Pac. 302.

Second: A district judge, assigned to another district outside of his own to hold court, is without jurisdiction, after the order has expired assigning him to said district, to sign an order extending the time to serve a case-made. First State Bank of Mountain Park v. School District No. 65, Tillman Co., supra.

Third: Although the regular judge is disqualified and has so certified his disqualifications to try the case upon the merits, he may make a legal order extending the time to make, prepare, and serve case-made. Rogers v. Bass & Harbour Co., supra.

Fourth: A special judge or judge pro tempore, or district judge, who has been assigned outside of his district to hold court, may in a case tried before him, at any time within six months from the date of the judgment appealed from, sign and settle the same when served within the time fixed by statute or any lawful order of extension. Cain v. King, supra.

The motion to dismiss is therefore overruled.

The appeal involves three separate and distinct propositions based upon separate and distinct causes of action, all united in one petition, and they will be considered separately. A brief statement of the facts may be summarized as follows:

R. E. L. Van Zant died in November, 1913, leaving his wife, Sarah F. Van Zant, and several minor children. He owned several thousand dollars' worth of personal property, consisting of live stock, farm machinery, also a farm situated in Pottawatomie county, which was occupied by him and family as a

homestead, together with the crops grown upon said land that year. The deceased was indebted about $20,000. The indebtedness consisted of a $5,000 note payable to H. T. Douglas and assigned by him to W. B. Reed, signed by R. E. L. Van Zant and Sarah F. Van Zant and secured by a first mortgage upon the farm. In addition, there were three notes, one for $7,000, one for $3,615. and one for $1,000, and all signed by Mr. and Mrs. Van Zant, payable to the bank herein and secured by a second mortgage on the farm. The $3,615 note was also secured by a chattel mortgage upon certain personal property. In addition, there was approximately $2,500 due other parties than the bank, and part of said indebtedness was secured by chattel mortgages. In addition thereto, there were certain notes held by the bank secured by chattel mortgages, and two small unsecured notes.

The deceased had $12,000 worth of life insurance, which was payable to the widow and not to the estate. In February, 1914, the life insurance was collected and deposited in the bank to the credit of Mrs. Van Zant, and at about the same time there was deposited about $700 from the sale of alfalfa seed. A few small items, such as taxes and funeral expenses, were paid from the sale of the alfalfa seed and on February 25, 1914, the total amount of $12,625 was placed to Mrs. Van Zant's credit. She executed checks on said date, and within about two weeks paid out practically the whole amount on the indebtedness of the estate.

Mrs. Van Zant, with the children, after the death of the deceased, continued to occupy said homestead, farmed the land, and proceeded in much the same manner as if she were administratrix. In the year 1917, she was appointed adminstratrix, and shortly thereafter brought this action against the bank.

The first cause of action alleged the bank alienated and embezzled certain alfalfa seed belonging to said estate, and also alienated certain property of said estate, and prayed for judgment for double the value of said property. The defendant answered, denying said allegation, and further alleged that the alfalfa seed was sold at the request of the plaintiff and the money deposited in the bank to her credit and used by the plaintiff in paying debts against the estate, other than debts due the bank; that the estate was liable for said debts, and the debts, or a great portion of the same, was secured by chattel mortgages. To this answer was attached a list of the debts paid by Mrs. Van Zant out of said

funds, and the amount of the same, and it was alleged that all of said debts were assigned by the parties to Mrs. Van Zant when paid by her.

To support the allegations of the petition. Mrs. Van Zant testified that the officers of the bank advised her to take charge of the estate, and not be appointed administrator but to pay the debts and to operate the place as her own, and the money derived from her insurance would pay off the indebtedness and that the bank would assist her. In February, 1914, some officer of the bank spoke to her regarding the alfalfa seed, and advised that it should be sold, and if she would send the same to town they would have it sold, and she had the same loaded in a wagon and sent to Shawnee, and the bank sold it to Clark and Kellar. It is undisputed that the money received was credited to her account and was used by her in paying indebtedness against the estate. She continued to farm the land for several years, and then advertised the personal property for sale at public auction. The bank clerked the sale, received the proceeds therefrom, placed the same to the credit of Mrs. Van Zant or applied the same on notes executed by Mr. Van Zant due the bank.

The defendant requested the court to instruct the jury, in substance, if they found the proceeds from the sale of the alfalfa seed were used for the benefit of the estate of R. E. L. Van Zant in paying off the claims against the estate, the defendant would not be liable for alienating and embezzling said alfalfa. This instruction was refused by the court. Another instruction to the same effect was requested regarding the personal property. The court, in substance, instructed the jury that if they believed from the evidence that the bank took charge of the property and alienated the same after the death of the deceased and before the appointment of the administratrix. it was their duty to return a verdict against the bank for double the amount of property or the proceeds of the property so alienated. The second instruction given by the court was in substance that if the plaintiff herself had charge of the property and sold and disposed of the same and the defendant merely assisted her as a matter of friendly assistance, prompted by kind feeling and as an accommodation, the jury should find for the defendant. The bank excepted to the instructions given, and excepted to the ruling of the court in refusing to give the instructions tendered.

Plaintiff's cause of action is based upon section 6324. Rev. Laws 1910. which provided. in substance, if any person before the grant-

ing of letters of administration embezzled or alienated any of the money, goods, chattels, or property of the deceased, he is liable in an action by the executor of said deceased for double the amount of the property so alienated. This section of the statute was construed by the territorial court in the case of Litz, Adm'r, v. Exchange Bank, 15 Okla. 564, 83 Pac. 790, which was tried upon an agreed statement of facts. It was agreed that the bank had a chattel mortgage upon the property, and prior to the time the administrator was appointed took possession of the property and foreclosed its mortgage, and sold the property for an inadequate consideration. The court held, under the agreed facts, the bank was liable for double the amount of the property alienated, under and by virtue of what is now section 6324, Rev. Laws 1910. There was no plea that the money was used in paying the debts against the estate, or that the administrator prior to his appointment had delivered the property to the bank.

The question, however, in this case presents a different state of facts. In the instant case, the widow took charge of the property herself and conducted and operated the business of her deceased husband, and as to the alfalfa seed she delivered the same to the bank to sell, and the proceeds were credited to her account, and applied to the indebtedness of said estate by her, and as to the personal property, she sold the same at public sale and the bank clerked the sale, and while she alleged the bank induced her to do so, still the sale was had in her own name and she received the money derived from the sale and she used the money or a portion thereof for the estate. Under this state of facts, the plaintiff by her acts became what is denominated an executor de son tort, and the general rule is, where the executor de son tort takes charge of the property, sells and disposes of the same, and thereafter takes out letters of administration in her own name, her acts relate back to the date of the death of the husband. The rule announced in 11 R. C. L. 464, is as follows:

"Although the courts have exercised the power to compel an executor de son tort to take out letters of administration, the rule has received well-nigh universal recognition that a subsequent grant of letters testamentary or of administration purges the wrong and legalizes the acts of an executor de son tort. In effect the subsequent granting of letters of administration relates back to the death of the intestate, and makes valid acts which otherwise would or might have been tortious."

As was held in the case of Vroom, Adm'r. v. Van Horne, 10 Paige (N. Y.) 549, 42 Am. Dec. 94:

"The grant of administration relates to the death of intestate, and legalizes all intermediate acts of the administrator, and such administrator cannot by suit avoid the acts done, or recover property transferred by him after such death and before his appointment."

Supporting this theory is Nance v. Gray (Ala.) 38 South. 916; Babcock v. Booth, 2 Hill (N. Y.) 181, 38 Am. Dec. 578; Priest v. Watkins, 2 Hill (N. Y.) 225, 38 Am. Dec. 584; Globe Accident Ins. Co. v. Gerisch, 163 Ill. 625; Hatch v. Proctor, 102 Mass. 351; Alvord v. Marsh, 12 Allen (Mass.) 603, wherein it was said:

"It has indeed been doubted whether an executor de son tort can give any title to the goods of the intestate as against the rightful administrator, especially where the conveyance is the single wrongful act which makes him executor de son tort. Mountford v. Gibson, 4 East. 441; Pickering v. Coleman, 12 N. H. 148. But no such question can arise where, as in the present case, the alleged executrix de son tort becomes herself afterward lawful administratrix. Her acts of receiving debts due to the estate, or property belonging to it, becomes by relation lawful acts of administration, for which she is liable to account, to the same extent as if they had occurred after the letters of administration were granted. The liability thus imposed upon her necessarily involves a validity in her acts which is a protection to those who have dealt with her concerning the estate. The plaintiff, therefore, if she has undertaken to receive a debt due to the estate which she represents before her appointment as administratrix and has given a discharge or acquittance therefor which would have been valid if she had then been duly appointed, has made herself chargeable with the whole amount of the debt; her subsequent appointment gave complete validity to the transaction; and she cannot maintain her action."

An examination of the cases discloses that the courts have been uniform in their decisions, where an heir or a person interested in the estate of a deceased person comes into possession of the property by reason of his relation with the deceased and takes charge of the estate and disposes of said property, pays claims against said estate, and is thereafter appointed administrator, that his acts relate back to the death of the deceased. I have been unable to find a case, and none is cited where, under such circumstances, the party was permitted to repudiate his acts, and maintain an action against the parties with whom he dealt before his appointment and hold the parties liable as having alienated the property. Of course, if there was fraud connected with the transaction, or the party obtained an

advantage over the estate, he might not be permitted to rely upon the wrongful acts of the executor de son tort to obtain such an advantage over the estate of other creditors.

The instructions of the court failed to advise the jury as to the law applicable to the facts in the case at bar, regarding the validity of the acts of an executrix de son tort and the fact that her possession of property would relate back to the death of the deceased.

The court in instruction No. 2 advised the jury that if the plaintiff took charge of the property and the defendant merely assisted her as a matter of friendly assistance, prompted by kindly feeling, as an accommodation in assisting her, the defendant would not be liable; or, in other words, if the plaintiff had charge of the property and the defendant acted for any other reason than the friendly feeling, prompted by kind feeling and accommodation, it would be liable. This would permit her to recover although she had charge of the property, had the same sold, and herself received the proceeds. This instruction was erroneous and prejudicial, and we have found no case, and none is cited, to support this proposition.

In regard to the refusal to give instruction No. 2 requested by the defendant, that if the court should hold that under the pleadings and evidence there is sufficient evidence to submit the case to the jury upon the grounds of fraud, or defendant under the facts was not dealing with the executor de son tort, or her acts did not relate back to the date of the death of deceased, for any reason that would be an exception to the general rule, but was itself alienating the property, still the defendant would be entitled to offset the amount paid by the widow out of said funds to satisfy the claims against the estate, or at least that portion of the same that is derived from the sale of the property.

A case almost identical was decided by the Supreme Court of Oregon in the case of Rutherford v. Thompson, 12 Pac. 382. The court in the syllabus stated as follows:

"When, in an action of trover brought by the executrix of a decedent, to recover damages for the conversion of personal property belonging to the estate, the evidence shows that the property came to the hands of defendant by direction of plaintiff, to be sold by him, and that he sold the same, and applied the proceeds to the payment of debts of the deceased, it cannot be said that he has converted the property to his own use, but to the use and benefit of the estate."

The only difference between the cases was in the Oregon case the property was delivered by the plaintiff to a third person, he sold the same, and he paid the debts, while in this case the alfalfa seed was delivered by the plaintiff to the bank, and it sold the same and deposited the money to her credit, and she signed the checks paying the claims against the estate. Cases supporting the same principle are Manchester v. Bursey (Tex. Civ. App.) 91 S. W. 817; Merrill v. Comstock (Wis.) 143 N. W. 313; Slate v. Henkle (Ore.) 78 Pac. 325; Johns v. Nolting, 29 Cal. 508.

While the instruction requested went to the extent of requesting the court to advise the jury that the plaintiff could not recover if the money was applied to the payment of the indebtedness of the estate, that would be the proper construction under the statute which did not permit a recovery of double the amount for the alienation of the property; but under a statute such as ours (section 6324, Rev. Laws 1910), if the administrator is entitled to recover double the value, then the party would only be entitled to offset to the amount of claims paid that were legal claims against the estate and claims that would have to be paid by the administrator.

The state of California had a statute very similar to ours, and it was construed by the Supreme Court of that state in the case of Beckham v. McKay, 14 Cal. 250, and the court held that said section did not give to the administrator a new right of action or create a new remedy, but that the administrator might maintain an action for conversion irrespective of said statute, and that said statute was remedial and merely increased the statute for the wrongful conversion. We think the same reasoning is applicable to our statute.

It is next contended that the court erred in not instructing the jury as to what personal property was exempt, as the administrator, as such, was not entitled to sue for the misappropriation of said property. We think there was no error in refusing to give this instruction. Section 6328, Rev. Laws 1910, provides that certain property shall be delivered by the executor or administrator to the wife, etc.; but as stated in the case of Johns v. Nolting, 29 Cal. 508:

"It is well settled that under our probate system the administrator is entitled to possession of the estate of the deceased until it is disposed of in the course of administration. Beckett v. Selover, 7 Cal. 238; Meeks v. Hahn, 20 Cal. 627."

The administrator is entitled to possession of this property for the purpose of delivering it to the administrator, and if the same was

converted prior to the appointment of the administrator, the action could be maintained by him subject to the conditions announced heretofore.

The defendant in error contends, however, there is a different rule involved in the case where the estate is insolvent. Some of the cases have recognized a different rule, and while counsel cites no case to support this contention, yet we think the rule is correctly stated in substance in the case of Toby v. Miller, 54 Me. 480, which in substance recognized the rule that the executor de son tort cannot gain an advantage for his own benefit by paying his own claim, but he may retain or offset whatever sum actually paid him which, if withdrawn from his hands, the rightful administrator or executor would be compelled to pay; or, in other words, he would be able to retain his proportionate part which would necessarily have to be paid him. See, also, 18 Cyc. 1361 and 1363.

The second cause of action alleges that the plaintiff in her individual capacity received $12,000 of life insurance and the same was turned over to the bank with the understanding and agreement that the same was to be applied upon the mortgage indebtedness against the estate and the said money would release the property from the mortgage indebtedness, but in truth and in fact the bank applied $4,000 to the payment of unsecured debts, and said misappropriation of funds was a fraud upon Sarah F. Van Zant for the benefit of the estate of R. E. L. Van Zant, for which Sarah F. Van Zant was acting, and the estate was entitled to credit upon the mortgage indebtedness held by the bank in the sum of $4,000. If this petition states a cause of action in favor of the estate, it is upon the theory, heretofore discussed in this opinion, that the plaintiff was an executor de son tort, and when depositing the money with the bank, and her subsequent appointment related back to the death of the deceased, and she was acting for and on behalf of the estate. The question of whether the petition upon this cause of action states a cause of action is not argued, and we will not consider the same.

Plaintiff in error discusses two propositions: First, that the court erred in refusing to give instruction No. 2 requested by the defendant, which instruction was, in substance if the jury found for the plaintiff upon this cause of action, the measure of damages would be the amount paid to the bank upon notes or accounts of the bank against said estate which were not secured by mortgages. The court, however, did not limit the amount of damages against the bank to the amount

paid the bank upon unsecured claims paid by her to third persons. In this we think the court committed error. While the plaintiff pleads that the bank took charge of the money, books, papers, and paid the indebtedness, she admits that she signed each of the checks that paid the outside claims and said checks were drawn upon the bank where the money was deposited to her credit; when the undisputed evidence disclosed that the money was deposited to her credit and paid out on checks signed by her, this refutes the plea that the money was paid by the bank to the third persons. The only items paid the bank on unsecured claims were $173.55 paid to settle a note of $170.00 dated July 30, 1913, and the note in the sum of $80.50 executed by Mr Van Zant to pay the premium on one of his life insurance policies dated June 13, 1913.

The third question presented is, the court erred in cancelling and holding for naught certain real estate mortgages executed by Mrs. Van Zant to the bank after the death of her husband, given to secure certain notes executed by her. She, as administrator, asked to have said mortgages removed as a cloud upon the land belonging to the estate of R E. L. Van Zant. The court held the notes and mortgages void insofar as they related to the estate of Van Zant. In this we think the court committed error. Mrs. Van Zant signed the mortgage in her individual capacity. The mortgage, of course, can cover nothing more than her individual interest in the estate. The interest of the minors cannot be divested by said mortgage, nor was any attempt made to divest the minors of their interest in the homestead.

As was said by the Supreme Court of California in the case of Hoppe v. Hoppe, 37 Pac. 894:

"Though a surviving wife may mortgage her interest in the homestead, a purchaser at the foreclosure sale has no right to the possession of any part of the homestead, during the minority of any of the children."

The court in the opinion discusses the right of the widow, who is the owner of an interest in the land or homestead to mortgage or convey said interest, subject, however, to the homestead rights. The same proposition is discussed by this court in the case of Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220. The administrator has no right to cancel a mortgage executed by Mrs. Van Zant upon her interest in the homestead. She would have a right to sell or mortgage her interest, but of course could not destroy the homestead qualities of the premises nor deprive the minor children of the right to occupy their homestead, and the grantee of her interest must take it subject to her limitations.

For the reasons stated, the judgment of the court is reversed, and remanded, with instructions to grant the plaintiff in error a new trial and to take such further steps as not inconsistent herewith.

HARRISON, C. J., and PITCHFORD, MILLER, ELTING, KENNAMER, and NICHOLSON, JJ., concur.