MURDOCK, Justice
(dissenting).
Consistent with the view I have expressed in previous cases, see Wood v. Wayman, 47 So.3d 1212, 1220 (Ala.2010) (Murdock, J., dissenting), and Richards v. Baptist Health System, Inc., 176 So.3d 179, 179 (Ala.2014) (Murdock, J., dissenting), I believe this Court should return to the holding in Ogle v. Gordon, 706 So.2d 707 (Ala.1997), and to a straightforward, simple rule that the subsequent appointment of a person as the personal representative relates back so as to validate a timely filing of a wrongful-death action by that person. This Court held otherwise in Wood, embracing a rule that can lead to disparate results in similar cases. Furthermore, today’s decision construes this Court’s opinion in Wood in a way that, I believe, injects an additional layer of uncertainty into this area of the law.
Simultaneously with the release today of the decision in the present case, this Court releases a no-opinion affirmance in Marvin v. Health Care Authority for Baptist Health, 204 So.3d 863 (Ala.2015), a case involving the same relation-back issue presented here. The trial court’s order in Marvin reflects some of the above-stated concerns. In an order in which the trial court ultimately concluded that it was bound by this Court’s opinion in Wood v. Wayman, it nevertheless took the opportunity to state:
*1201 “The Court is left to decipher the Ogle [v. Gordon, 706 So.2d 707 (Ala.1997)], and [Wood] decisions which are seemingly contradictory. In Ogle, the Court explicitly held that the issuance of the letters related back to the time of the filing of the petition in probate court. [Wood ] concluded that Ogle had nothing to do with relation back despite all evidence to the contrary including: the express statement of the issue, the holding, and fourteen references to ‘relation back’ or a derivative thereof. Ultimately, [Wood] decided that there was no relation back....
[[Image here]]
“Accordingly, this court has no choice but to follow the most recent pronouncement and to dismiss this action.... The bar should be forewarned that the two year statute of limitations in a wrongful death case is no more — the time limit is actually two years less whatever time it will take for a probate judge to issue letters. Better hope the judge is not on vacation, that the heirs are easily located, etc.”
As I have previously noted, the purpose of a statute ■ of limitations is to provide a “bright-line” time limit that provides uniformity and certainty. Moreover, it is a time limit for one thing and one thing -only: the filing of a complaint to commence a legal action. (I am unfamiliar with any line of thought that satisfaction of a statute of limitations depends upon both the filing of a complaint and the filing of other documents, or put differently, that a statute of limitations is intended as a deadline for filing a petition for letters testamentary.)
Further, and of even more fundamental import to the manner in which statutes of limitations are intended to function, whether a plaintiff meets the statute-of-limitations deadline should be within that plaintiffs control and not the control of a third party, e.g., a probate court acting on a petition for letters testamentary or of administration. When meeting a statute of limitations depends upon the acts of a third party, two plaintiffs who take exactly the same actions at the same time to pursue their claims face the distinct possibility of different outcomes.
The bottom line for me — and, I think, a rule that is the most logical, simple, and just — is the common-law rule. It is a rule that is not dependent upon the precise wording of § 43-2-831, Ala.Code 1975 (that affirmatively provides for relation back for acts by the personal representative that benefit an estate). It is a well established rule that this Court acknowledged with approval in Ogle (authored by Justice Maddox and joined by Chief Justice Hooper, and Justices Kennedy, Butts, and See, with a “concurring in the result” vote from Justice .Cook and no dissents) as one that treats the eventual appointment of a personal representative as relating back as far as the date of death so as to give validity to interim acts by the person so appointed that align with the powers granted personal representatives. It is a rule that operates on the court’s issuance of letters testamentary or of administration whenever that occurs, and it amounts to nothing more than an ab initio formal ratification of the role played by the recipient of those letters in tlie weeks or months before they are ultimately issued:
“The doctrine of relation bach. with respect to the powers of a personal representative has been in existence for approximately 500 years, and this Court first recognized it in Blackwell v. Blackwell, 33 Ala. 57 (1858). See also, McA-leer v. Cawthon, 215 Ala. 674,- 112 So. 251 (1927), and Nance v. Gray, 143 Ala. 234, 38 So. 916 (1905). In McAleer v. Cawthon, this Court stated:
*1202 “ ‘[I]t is a rule of practically universal recognition that:
“ ‘ “When letters testamentary or of administration are issued, they relate back so as to vest the property in the representative as of the time of death and validate the acts of the representative done in the interim; but such validation or ratification applies only to acts which might properly have been done by a personal representative, and the estate ought not to be prejudiced by wrongful or injurious acts performed before one’s appointment.” 28 Corp. Jur. 1180, § 400.’
“215 Ala. at 675-76, 112 So. at 251. In Griffin v. Workman, 78 So.2d 844 (Fla. 1954), the Florida Supreme Court, citing this Court’s opinion in McAleer, supra, discussed the doctrine and stated:
“ “We think, therefore, that the issue is ruled by the ancient doctrine “that whenever letters of administration or testamentary are granted they relate back to the intestate’s or testator’s death.... The doctrine has been accepted with virtual unanimity, since it was promulgated, in a long line of cases.” Annotation, 26 A.L.R. 1360. Under this doctrine “all previous acts of the representative which were beneficial in them nature to the estate and ... which are in their nature such that he could have performed, had he been duly qualified, as personal representative at the time, are validated.” 21 Am.Jur., Exec. & Admin., section 211; Schouler on Wills, Executors and Administrators, 5th ed., Vol. 2, p. 1176.
“ ‘A wide variety of acts and conduct by a party acting in behalf of an estate when he was not properly qualified have been held to be validated or ratified by his subsequent qualification as administrator. A few of the many examples that might be cited are: an advancement to a distributee, McAleer v. Cawthon, 215 Ala. 674, 112 So. 251; the sale of estate property, Shawnee Nat. Bank v. Van Zant, 84 Okl. 107, 202 P. 285, 26 A.L.R. 1349 [ (1921) ]; the execution of a deed, Wilson v. Wilson, 54 Mo. 213 [(1873)].
“ ‘More specifically in point, it has been held that where a wrongful death action was instituted by a party “as administrator,” his subsequent appointment as such validated the proceeding on the theory of relation back. Archdeacon v. Cincinnati Gas & Electric Co., 76 Ohio St. 97, 81 N.E. 152 [(1907)]. In the opinion the court pointed out that the institution of suit “was not a void performance, being an act done during the interim which was for the benefit of the estate. It could not be otherwise, for it was an attempt to enforce a claim which was the only asset of the estate. This rule is sustained by a large number of authorities, and ... appears, also, to be just and equitable_ [T]he proceeding was not a nullity. It was, on the other hand, a cause pending in which, by the liberal principles of our Code, the party plaintiff, though lame in one particular, might be allowed to cure that defect and proceed to a determination of the merits.” Archdeacon v. Cincinnati Gas & Electric Co., supra... .[8] Followed in Anderson v. *1203 Union Pac. R. Co., 76 Utah 324, 289 P. 146 [ (1930) ].
‘“Upon the same theory, it was held in Clinchfield Coal Corp. v. Osborne’s Adm’r, 114 Va. 13, 75 S.E. 750 [ (1912) ], that a wrongful death action instituted by a party prior to the time he was appointed administrator may be deemed validated and ratified upon subsequent qualification of the personal representative; and in Bell-heimer v. Rerucha, 124 Neb. 399, 246 N.W. 867 [ (1933) ], that an amended petition was properly filed to show appointment of a plaintiff undow as administratrix after commencement of suit but before answer.’
“73 So.2d at 846-47.”[9]
Ogle, 706 So.2d at 709-10 (footnote omitted; emphasis added).
I recognize that the common-law cases sometimes speak of acts of the eventually appointed personal representative that are beneficial “to the estate”; that, however, appears to be true simply because the estate is historically the entity on whose behalf the personal representative acted, and was acting, in those cases. When a special statute, like Alabama’s wrongful-death statute, imparts to the personal representative authority and responsibility to act on behalf of the heirs directly, the same relation-back principle applies with equal reason. After all, under Alabama’s statutory scheme, such acts are in fact “acts which might properly have been done by a personal representative.” And, indeed, that was the holding of this Court in Ogle when it applied this relation-back principle to an Alabama 'wrongful-death action brought, not on behalf of an estate, but on behalf of the heirs, by one who, at the time he filed the action, had not been appointed personal representative and who was not appointed as such until two years after the statute of limitations had run.[10]
*1204 I disagree with the Wood Court’s reading of Ogle as recounted in the main opinion and, in turn, with the construction of Wood in the main opinion. In my view, neither Ogle nor Wood held that the reason a plaintiff is not appointed as personal representative before the filing of a wrongful-death complaint or the expiration of the statute of limitations matters. In Wood, the Court held simply that, “[b]ecause Wayman was not a personal representative appointed by the probate court when she filed the action or at the expiration of the statutory two-year period for filing a wrongful death action, ... Wayman’s appointment as a personal representative ... could not relate back to the date of [the decedent’s] death or to the date of the filing of the wrongful-death action.” 47 So.3d at 1219.
*1205 As , for Ogle, it is true that the Court stated in that case that “[t]he probate court, through inadvertence did not issue the letters of administration” in a timely manner and that “[t]hat dereliction should not bar [Ogle’s] action.” 706 So.2d at 711. That fact of “inadvertence” or “dereliction” on the part of the probate court, however, was not the ratio decidendi for the Court’s holding. Instead, the Ogle Court embraced a clear, bright-line rule of relation back and, in the quoted passages, was simply making the point that the rule it adopted would avoid the undesirable outcome described.
I must add that I am not sure what circumstance would qualify as “inadvertence” or “dereliction” such that it would affect the inquiry at issue (or what would constitute sufficient “efforts [by a plaintiff] to bring the impending expiration of the ... limitations period to the attention of the [probate court]”). 205 So.3d at 1192. Nor am I sure by what judicial mechanism we are to take the measure of the probate court’s acts or omissions, or even its state of mind, in this regard. To my way of thinking, the stated condition is not one that bespeaks of the type of bright-line rule necessary for uniform and certain results.
Based on the foregoing and on my previously expressed position, I respectfully dissent. I would return to the holding in Ogle, which I see as producing just results within the context of a straightforward, bright-line rule that allows for certainty and uniformity of results.

. In addition to noting that the rule in question was supported by "a large number of authorities” and was "just and equitable," the court in Archdeacon noted that the delay in the formal issuance of notice had no prejudicial effect and that the rule in question was applicable even if the proceeds from the wrongful-death action inured to heirs at law who were not beneficiaries of the estate:
"The plaintiff having fully qualified as administrator before the case was reached for trial, every right of the defendants upon the *1203 merits of the case was fully preserved, and in no possible aspect could the delay in perfecting the bond and receiving the letters of administration prejudice the defense of the fendants upon the real meritorious question involved in the controversy, which was whether or not the defendants’ negligence was the cause of the death.
[[Image here]]
"... We think it idle to urge that the rule [of relation back] cannot apply in this case because the proceeds of any judgment ob- ■ tained would go to next of kin only, and not in the usual course of administration. There is no valid reason for sustaining the rule in one case and disregarding it in the other.”
Archdeacon v. Cincinnati Gas & Elec. Co., 76 Ohio St. 97, 103-07, 81 N.E. 152, 152-54 (1907),

. In dicta in Griffin v. Workman, 73 So.2d 844 (Fla.1954), the Florida Supreme Court noted that a different result had been reached in some cases where a statute of limitations had expired in the interim, but cited Douglas v. Daniels Bros. Coal Co., 135 Ohio St. 641, 22 N.E.2d 195, 198 (1939), in support of its position that this should make no difference. 73 So.2d at 847-48.

. Both the main opinion and the special concurrence make the point that the limitations period for the commencement of a wrongful-death action is a "statute of creation,” or a "substantive statute of limitations.” This difference did not alter the.force of reasoning and result reached in Ogle or the application of the common-law principle employed therein. And, indeed, Alabama cases commonly refer simply to the “statute of limitations" in reference to the timeliness of the filing of wrongful-death claims under Alabama law. See, e.g., Ex parte Tyson Foods, Inc., 146 So.3d 1041, 1045 (Ala.2013); Ex parte Noland Hosp. Montgomery, LLC, 127 So.3d 1160, 1169 (Ala.2012); Precise v. Edwards, 60 So.3d 228, 229 (Ala.2010); Henderson v. MeadWestvaco Corp., 23 So.3d 625, 628 (Ala.2009); Okeke v. Craig, 782 So.2d 281, 283 (Ala.2000); Hall v. Chi, 782 So.2d 218, 220 (Ala.2000); Hoglandv. Celotex Corp., 620 So.2d 621, 622 (Ala.1993); Dukes v. lowers, 584 So.2d 524, 526 (Ala. 1991); Liberty Mut. Ins. Co. v. Lockwood Greene Eng'rs, Inc., 273 Ala. 403, 406, 140 So.2d 821, 823 (1962).
Whether considered substantive or remedial, there is less difference in the operative *1204 effect of the two concepts than at first might be stxpposed. In Dorsey v. United States Pipe & Foundry Co., 353 So.2d 800, 802 (Ala. 1977), this Court observed:
"Where a statute creates a cause of action which did not theretofore exist, and where it provides that such cause of action must be brought within the time specified in the statute, the general rule is that fraud does not toll the statute of limitations unless the statute in question expressly so provides. See, e.g., Central of Georgia Railway Company v. Ramsey, 275 Ala. 7, 151 So.2d 725 (1962). This rule has met with widespread dissatisfaction, however, and is replete with exceptions. See, e.g., [H.D. Warren, Annotation,] Effect of fraud to toll the period for bringing action prescribed in statute creating the right of action. 15 A.L.R.2d 500, at 519-526 [(1951)]. See also, 3 Larson, Workmen’s Compensation Law, § 78.45.”
Among the authorities noted by the Court was Central of Georgia Ry. v. Ramsey, 275 Ala. 7, 151 So.2d 725 (1962), which in turn quoted from a case decided by the United States Court of Appeals for the Fourth Circuit:
" ‘[T]he distinction between a remedial . statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words.’ ”
275 Ala. at 14-15, 151 So.2d at 731 (quoting Scarborough v. Atlantic Coast Line Ry., 178 F.2d 253, 259 (4th Cir.1949)).
In this same vein, I note that Rule 9(h), Ala. R. Civ, P., which deals with an amendment changing the name of an "opposing party,” would not appear by its terms to be apposite to this discussion. Nonetheless, it is instructive to note that, even if the issue here were the naming of an "opposing party,” this Court stated in Ex parte FMC Corp., 599 So.2d 592, 594-95 (Ala.1992):
"When this Court stated in [Columbia Engineering International, Ltd. vj Espeyi, 429 So.2d 955, 959 (Ala. 1983),] that the purpose of Rule 9(h) is to ‘toll’ the statute of limitations in emergency cases, it did not mean that the running of the statutory period would be temporarily suspended, only to recommence upon the happening of some future event. Therefore, it makes no difference that § 6-5-410 is a statute of creation. If the plaintiffs complied with the requirements of Rule 9(h), their action was timely filed within two years of Garry Spence’s death and the subsequent amendment correctly designating FMC ,as one of the fictitiously named defendants related back to the date on which the complaint was filed.”
Compare Ex parte Tyson Foods, Inc., 146 So.3d 1041, 1045 n. 5 (Ala.2013):
“The Tyson petitioners also argue that the wrongful-death statute contains its own limitations period and thus is a 'statute of creation’ not subject to tolling. See § 6-5-410(d), Ala.Code 1975; Cofer v. Ensor, 473 So.2d 984, 991 (Ala. 1985). This fact, however, does not affect the capacity analysis. Rule 17(a) does not toll the statute of limitations. '[Application of relation back does not extend the limitation period’ but merely allows substitution of a party in a suit otherwise timely filed.”
(Emphasis added.) In other words, the relation-back doctrine does not "toll” a statute of limitations; it simply recognizes and clarifies what has already occurred.