Hillsborough,
No. 5119.

·EMILE PETTIGREW, JR. *v.* ROSE-ANNA GAMACHE *& a.*

Argued April 2, 1963.

Decided May 28, 1963.

*Harold E. Wescott* and *Sheehan, Phinney, Bass, Green & Bergevin* and *Joseph F. Devan* (*Mr. Devan* orally), for the plaintiff.

*D'Amours & D'Amours* (*Mr. Ernest R. D'Amours* orally), for the defendants.

DUNCAN, J. By will probated in 1947 Emile Pettigrew, late of Manchester, bequeathed and devised his estate in trust to "use and apply the net income . . . for the care, maintenance and benefit of my son, Emile, Jr., during his life," with instructions to the trustees to "use and apply any part or the whole of the principal if they find it necessary." The corpus of the estate was left at the decease of Emile, Jr. in equal shares to the survivors of the testator's eleven other children.

The defendant Rose-Anna was appointed trustee on September 21, 1948 and has since administered the trust. During this period the corpus of the trust estate has consisted of a frame three-story apartment house and garages in Manchester, known as 199 Kelley Street and 589 Montgomery Street.

The life beneficiary who has been handicapped since birth by hearing and speech difficulties, is now seventy-three years of age. He has resided on the trust property some fifty years. The trustee is four years older than he.

The Trial Court made the following findings of fact: "On April 3, 1959, Rose-Anna Gamache, as trustee, sold said real estate to her son, Philippe O. Gamache, for the sum of Nine Thousand Five Hundred Dollars ($9,500.00). The son now has his office as a Chiropractor on the premises.

"During the year 1958, Rose-Anna Gamache as trustee, expended One thousand nine hundred seventy-nine dollars and forty-eight cents ($1,979.48) for 'various services, labor and repair work' from the trust funds in making improvements on the real estate sold to her son. During the previous ten years, the expenditures on the real estate for 'various services, labor and repair work' totaled Eight hundred seventy-four dollars and eighty-four cents. ($874.84).

"By a separate agreement, dated April 7, 1959, four days after the date of the sale on April 3, 1959, recorded Hillsborough County Registry of Deeds on July 10, 1959, Book 1574, Page 102, it was provided:

" 'No. 1 That Philippe O. Gamache shall permit Emile Pettigrew to occupy the three rooms in which he now lives on the first floor or similar accommodations in the same property so long as he can live there himself without the need of any special assistance.

" 'No. 2   That the Trustee shall pay said Philippe O. Gamache the weekly rent of $10.00 for said occupancy and said Philippe O. Gamache shall furnish both light and heat.

" 'No. 3   That the Trustee shall have the right to examine from time to time the account of Philippe O. Gamache with the bank holding a mortgage on said property.' . . .

"Since the sale to his nephew, Philippe O. Gamache, Emile Pettigrew, Jr., lives in three rooms on the ground floor. Since the date of his purchase, Philippe O. Gamache has expended Two thousand dollars ($2,000.00) of which sum, about Eight hundred dollars ($800.00) was to replace the heating plant. The thermostat which controls the heat in Emile Pettigrew, Jr.'s apartment is located in the office of Philippe O. Gamache.

"Prior to the sale in the year 1958, the gross income from rents for the property was Nine hundred eighty-two dollars ($982.00). Charges against the property and other miscellaneous charges amounted to Six hundred eleven dollars and twenty-five cents ($611.25), (not including One thousand and nine hundred seventy-nine dollars and forty-eight cents ($1,979.48) in repairs and maintenance spent that year). The difference of Three hundred seventy dollars and seventy-five cents was available for the use of the petitioner under the terms of the trust. After the sale the income from the trust was 4% per annum on the amount on deposit in a savings account. The amount on deposit at the time of the trial was Nine thousand four hundred four dollars and twenty-one cents ($9,404.21). Since the trust is obligated to pay Ten dollars ($10.00) per week for rent for the petitioner part of the rent must be paid from principal of the trust (or from other income of the beneficiary). The net loss of income to the beneficiary is approximately Ten dollars ($10.00) per week."

The Court found and ruled that "the conveyance of the real estate to [the defendant Philippe] who is on the premises from day to day was and is for the best interest of the beneficiary." The findings and rulings conclude: "On all the evidence, and the above findings and rulings, the Court is unable to find that the trustee did not act in a prudent and reasonable manner and did not benefit the beneficiary in conveying the property to her son under the particular circumstances which exist."

We are satisfied from a review of the testimony that the findings and rulings of the Trial Court were warranted by the evidence and are free from error of law. It is apparent from the record

that in 1958 the trustee was concerned for the welfare of the beneficiary. His living quarters in the trust property were inadequately heated, he had recently undergone some illnesses, and the revenue from the property was insufficient to permit additional expenditure in any substantial amount, either for renovation or for care of the beneficiary in the event of major medical expense.

The trustee's son, who had recently been licensed to practice as a chiropractor, purchased the property for a residence and office, subject to an agreement that his uncle, the beneficiary of the trust, should be permitted to live there at a rent of ten dollars a week so long as he should be able to care for himself. The sale of the property to the son provided an opportunity to convert the principal of the trust into cash, and at the same time to preserve his accustomed residence for the beneficiary, for as much longer as he should be physically able to live by himself, with a relative at hand to "look after him."

The plaintiff correctly states that while a trustee's sale of trust property to a "purchaser . . . related to the trustee may not be in itself a sufficient ground for avoiding the sale, it is a circumstance to be considered in determining whether the sale was made in the best interests of the beneficiaries and if, on all the facts, it appears that the trustee sold the property for less than he could have obtained from others, or otherwise abused his discretion in making the sale, the trustee is guilty of a breach of trust and the sale can be set aside . . . ." See 2 Scott on Trusts (2d *ed.*) *s.* 170.6, *p.* 1208; Annot. 131 A.L.R. 990. The plaintiff relies upon *Noonan Estate,* 361 Pa. 26, 31, for the proposition that the extent of the trustee's disqualifying interest need not be such as to have affected his judgment, but it is enough if it "might" have done so.

In the case before us however, there was no evidence that the trustee sold the property for less than might have been obtained elsewhere in a sale subject to the restrictions in favor of the beneficiary which were accepted by the defendant purchaser. The sale resulted in no profit to the trustee, and in no conflicting personal interest analogous to the mortgage obtained by the trustee individually in *Noonan Estate, supra. Cf. Coulter Estate,* 379 Pa. 209, 219; *Anderson* v. *Bean,* 272 Mass. 432, 446-447.

As appears from the comments in Restatement (Second), Trusts, cited by all parties, if a trustee is shown to have been "improperly

534

influenced by his relationship to the purchaser" or "has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale" then he is guilty of a breach of trust. Restatement (Second), Trusts, *s.* 170(1), *comments* c and e.

In this case, however, there was no evidence that the trustee had any disqualifying interest of a pecuniary nature in the sale, and the question of whether she was "improperly influenced by her relationship" to the purchaser (Restatement (Second), Trusts, *supra*) was one of fact which was decided adversely to the plaintiff. See *Hollis* v. *Tilton*, 90 N. H. 119, 122-123; *Vinal* v. *Gove*, 275 Mass. 235. Since there was evidence upon which this finding could properly be made, the decree of the Trial Court is sustained.

The plaintiff does not seek another sale of the premises free from the restriction entitling him to live on them, but prays for reconveyance of the property to the trust estate on equitable reimbursement of the purchaser. On the facts found, such an order would be of doubtful benefit to the plaintiff, and constitute an invasion of the discretion of the trustee to "use and apply . . . the principal" for his benefit. *Morse* v. *Trentini*, 100 N. H. 153.

*Exceptions overruled.*

All concurred.