## Scott Estate

728

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Philip A. Bregy*, for exceptant.

*William H. Lathrop, Samuel J. Logan, Thomas N. O'Neill, Jr.*, and *William H. S. Wells*, contra.

SAYLOR, J., January 18, 1965.—The issue here is the authority of an auditing judge in awarding $20,000 in commissions on principal as extra compensation to trustees for services rendered over a 21-year period in a trust estate awarded to them in 1942 after they had received full commissions on principal in their capacity as executors.

The testator died in 1940 leaving a will in which he named his brother, his wife and Girard Trust Company (now Girard Trust Bank) as executors and trustees. On the audit of their account as executors they received full commissions on principal and income, which they divided equally. The balance of the estate was awarded to them as trustees.

During the term of the trust commissions of $42,122.49 at approximately 5 percent on total income of $859,000 were paid to the trustees. The two individual trustees received as their shares of the commissions a total of $10,946.00 and the corporate trustee received $31,176.00. The brother died in 1945. From 1945 to 1953, the widow and the trust company divided income commissions equally. Thereafter all such commissions were paid to the trust company. Following the death of the widow in February 1963, the trustees' account was filed. It showed that the value of the trust res had increased from approximately $600,000 in 1942 to nearly $1,500,000 in 1963.

At the audit of the account the estate of the widow and the corporate trustee asked for additional com-

missions on principal. No evidence was offered as the basis of the claim, except testimony that, under the corporate fiduciary's standard schedule of compensation, it would be entitled to total commissions of over $90,000, whereas the estate had paid only $66,500, of which the trust company had received only $39,000. The schedule of fees was first published in 1943 and from time to time republished. Under it individual trustees do not participate in the scheduled rates.

The standard schedule was never in effect so far as this trust is concerned. There was no inter vivos agreement between decedent and the executors and trustees covering their compensation. Nor was any testimony offered to support the schedule by way of statements concerning overhead, time records, extent of communications between the parties by written correspondence or telephone, the number of meetings for discussion of investments, etc. On the subject of overhead the court was not informed as to the apportionment of its office costs and the portion charged to the trust department based on space utilized and material and staff charges.

Nor was any reference made by the corporate fiduciary to the generally known and judicially authorized deposit to its credit of substantial amounts of uninvested cash belonging to this and other estates managed by it as fiduciary, interest on which is not received by those estates.

The trustees' claim for additional compensation was not pressed because of extraordinary or unusual services rendered. It was made clear by the testimony of a trust officer and of two investment officers that their company's services rendered throughout the 21-year period of the trust were of the usual character and no more.

The auditing judge determined that, on the basis of what he considered just and reasonable in the light of the various standard elements to be considered and

evaluated in fixing compensation, an additional payment of $20,000 out of principal was due to the trustees, of which the company was to receive $14,000.

The auditing judge concluded that Williamson Estate, 368 Pa. 343 (1951), imposed no bar on allowing additional compensation for services rendered by the trustees, principally on the ground that in that case it was a request for an interim commission and not a terminal commission that was before the court. The auditing judge seems to have relied on the language of Mr. Chief Justice Bell in his concurring and dissenting opinion in that case as hereinafter referred to.

The Attorney General of the Commonwealth of Pennsylvania, as parens patriae of charitable trusts, and Children's Hospital, the sole remainderman, objected to any award to the trustees, and, following the adjudication, the hospital filed exceptions thereto. They contend that, under the law in effect at the inception of the trust, double commissions on principal could not be paid to trustees who had been compensated as executors, as such commissions were illegal, and that under Williamson Estate, supra, the Act of April 10, 1945, P. L. 189, and the Act of May 1, 1953, P. L. 190, as amended by the Act of August 19, 1953, P. L. 1173, did not apply. On the other hand, the trustees assert that they are entitled to just and reasonable compensation for services rendered and that the Act of 1953, supra, is constitutional in its application to preexisting trusts and gives authority to the court to award additional compensation out of principal.

Section 45 of the Act of June 7, 1917, P. L. 447, which prohibited double charges against estate principal by executors-trustees, was repealed by the Act of April 10, 1945. In Williamson Estate, supra, the Supreme Court sustained the action of this court, 70 D. & C. 230, in refusing additional compensation by

way of an interim commission on principal because of the lack of any authority to allow it. But the Supreme Court, after hearing argument on that point, ordered reargument on the more basic question, namely, whether any additional compensation could be allowed an executor-trustee even if it were a terminal commission.

The court held in Williamson Estate that both the question as to the right to an interim commission and the question whether the Act of 1945 operated retroactively were before the court, and it considered both questions. It said not only that interim commissions were improper but also that the legislature could not by the Act of 1945 affect a trust accepted before its effective date, as was the trust before it.

The opinion of the court in Williamson Estate, supra, at page 352, reads:

"Appellant, the corporate fiduciary, accepted this trust in 1930 under the law as it then existed. It was paid in full (except for commission thereafter received by it on income it received and distributed). Such acceptance fixed the rights, liabilities, exemptions, defenses and expectations of both life tenant and remaindermen. Their rights were vested under what necessarily is an implied contract. Such rights having vested, and appellant having been paid in full, the imposition of additional compensation under a retroactive interpretation of this statute would be unconstitutional under the Fourteenth Amendment of the United States Constitution (citing cases)."

In his concurring opinion Mr. Justice Bell, now Chief Justice, taking a different view of the retroactive application of the Act of 1945, stated that the repealer might be effective as to post-1945 services: 368 Pa. 354-5.

Under the majority decision in Williamson Estate it would appear that the 1945 Act cannot constitution-

ally apply in any measure to a trust accepted before the repealer took effect. Hence, once a fiduciary in a pre-1945 trust accepts full commissions to which he is entitled as an executor, he cannot thereafter take a commission on the same principal as trustee.

However, the corporate trustee contends that, following this decision, the legislators passed the Act of 1953, supra, which provides that "wherever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction . . . shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him." This power is given, inter alia, with respect "To all services heretofore rendered by any fiduciary" and "To all services hereafter rendered by any fiduciary heretofore appointed."

There is a question whether this enactment was intended primarily to remedy the situation arising in Williamson Estate, that is, the lack of authority in a court to award interim commissions. Actually, of course, the act covers terminal commissions as well. Argument that the legislature may not have intended to cover both situations is futile, because both kinds of commissions, if paid in a case as here considered, constitute double commissions on principal, something that was prohibited by the Act of 1917, supra.

Likewise, under the logic of the Williamson decision, the Act of 1953 may not, any more than the Act of 1945, affect adversely the respective rights of the parties in trusts accepted prior to the repeal of section 45 of the Act of 1917. If it was unconstitutional to effect the repeal of the bar on double commissions in trusts accepted before the repeal in 1945, it is unconstitutional to effect it with respect to such trusts in 1953.

The corporate fiduciary contends that Williamson Estate cannot control here for two reasons: (1) that it is limited in its application to the matter of double commissions and hence its ruling on double commissions is dictum, and (2), that it is no longer the law in Pennsylvania because it was overruled in Catherwood Trust, 405 Pa. 61 (1961).

As to (1), we cannot agree with counsel for the trustees that when a case is decided on two alternative grounds the decision in one or the other is dictum. Williamson Estate was decided on two different grounds and the rationale of each decision is entitled to equal dignity: Dickson Estate, 14 D. & C. 2d 741, 742-3 (O. C. Philadelphia).

As to (2), it must be emphasized that in Catherwood Trust the issue before the court involved the apportionment of stock dividends between principal and income. There, to be sure, Crawford Estate, 362 Pa. 458 (1949), and other cases of similar nature having to do with apportionments were overruled. Court-made law was changed in that decision. In the instant case it is statutory law that is involved. In declaring the Act of 1945 unconstitutional as applied to Williamson Estate, the opinion of the Supreme Court cited, inter alia, Crawford Estate, supra. That is no reason to find that because Crawford Estate was cited in Catherwood Trust the latter case has the effect of overruling it. There must be more positive action than that to overrule Williamson.

Referring to Catherwood Trust, it must be noted that it is one thing for a court to determine that what it has said about stock dividends being classified as income at one time shall be changed by saying that they are to be classified as principal at another time. It is quite another thing to alter a contract, a contract willingly entered into and still pending between parties, based upon legislative enactment, where it is alleged that

hardship is suffered by one of the parties. The fact that the cost of living and the effects of inflation may have caused the corporate trustee to revise its rates after it had accepted its office on the basis of the law obtaining at the date of acceptance is no justification for altering unilaterally a contract effective for 21 years.

The corporate fiduciary has called the court's attention to decisions in other jurisdictions, such as New Jersey, New York and California. They are not controlling here. While the relief there given may give comfort to the fiduciaries before us, they cannot affect our decision. There is no need to look elsewhere than in Pennsylvania for precedent in the issue before us. The abundance of decisions on the subject in this State and the clear-cut ruling in Williamson Estate are not only adequate guides, but they are mandatory directions.

Also cited is Demorest v. City Bank Farmers Trust Co., 321 U. S. 36 (1944), where the matter of apportionments determined by a New York court was reviewed by the United States Supreme Court, which held that judicial rule changes did not invalidate existing statute law which applied only to judicial settlements of estates pending at, or initiated after, the enactment. The judicial rules referred to were "tentatively put forward" and left much to discretion. Hence, they could be altered by the legislature because it was not deprived of power to make further reasonable rules even if, in doing so, the values of various interests and expectancies under the trust are affected. It was held that the Fourteenth Amendment did not invalidate the act of the legislature: 321 U. S. at 47, 48, 49.

In the opinion it was stated that "This statute does not purport to open accountings closed or to take away rights of remainders judicially settled under the old rule." Query, was not the right of the remaindermen,

Children's Hospital, settled when the trustees entered upon their duties after payment to them of all commissions which they were entitled to charge to principal?

Nor are we impressed with the corporate trustee's reliance on the Act of July 14, 1836, P. L. 628, which authorizes courts to allow reasonable and just compensation for trustees' services. That act, of course, could not prevent any legislature from providing rules determining the manner in which, and the extent to which, such commission should be calculated. While the Act of 1917 did not repeal the Act of 1836, it most certainly declared that there should not be double commissions on the same principal.

Although not cited by either party in the briefs, Coulter Estate, 379 Pa. 209 (1954), has been considered by the court as possibly apposite. The record indicates that commissions on principal allowed the trustee who had been an executor related to real estate. As the commissions allowed to the executors as such did not include commissions on then unsold real estate, this was not a case of double commissions such as that before us. Hence, Coulter Estate is not apposite.

When the trustees collected their proper commissions as executors and elected to take over the residuary estate as trustees they did so with their eyes open. They knew, or at least they should have known, that they were then bound by the provisions of the Act of 1917 under which they were unequivocally barred from any commissions on principal thereafter.

We are satisfied that Williamson Estate is still the law which governs this court in the matter of commissions on principal of trust estates. That its effect may be harsh, and that because of it trustees cannot be properly compensated in managing estates accepted by them at a time when it was clearly the law that double commissions on principal were not allowed, is a matter over

which we have no control. If public policy requires that Williamson Estate be overruled and that the courts be permitted to allow double commissions retroactively, it is for the Supreme Court of Pennsylvania so to say. Until it does that, we consider ourselves bound by its clear pronouncement.

Accordingly, the exceptions are sustained, and the adjudication is hereby amended by striking therefrom all allowances out of principal by way of commissions to the trustees on principal.

*Opinion Concurring in Part and Dissenting in Part*

LEFEVER, J., January 18, 1965.—I agree with the reasoning and conclusion of the learned auditing judge that recent Supreme Court cases and the public policy expressed in the Act of July 25, 1963, P. L. 305, and the Act of May 1, 1953, P. L. 1173, strongly indicate that Williamson Estate, 368 Pa. 343, is no longer the law. Therefore, in my opinion, the Act of April 10, 1945, P. L. 189, may now be interpreted to constitutionally authorize award of commissions on principal to a trustee for its services performed subsequent to 1945, even though it previously received compensation for serving as executor.

On the other hand, I agree with the majority that the evidence presented to the auditing judge was insufficient upon which to base a finding of fact that $20,000 is proper compensation for the services rendered by the corporate trustee in the instant case. This court is not bound by a corporate fiduciary's own evaluation of the worth of its services or by a schedule of compensation set by the Corporate Fiduciaries Association. The determination of the value of the trustee's services is for this court.

Both corporate and individual fiduciaries should be properly compensated. "The laborer is worthy of his hire." We should not, and do not, expect a trustee to perform fiduciary services at a loss. Corporate fiduciaries

perform valuable and useful services in the community, which deserve to be encouraged. However, the burden is upon the fiduciary to prove what is fair and reasonable compensation.

This is an important case because the trustee is attempting to overcome the adverse decision in Williamson Estate, supra. Therefore, the decision in the instant case will be far reaching. Hence, the corporate trustee should have provided us with a record at least as complete as in Williamson Estate.

President Judge Klein was the auditing judge in Williamson Estate. He filed a comprehensive, well reasoned adjudication in which he carefully analyzed the voluminous record in that case. Inasmuch as his adjudication was *not* included in the report of this case, 70 D. & C. 230, I am taking the liberty of quoting at length his views there expressed, which are apposite today, viz:

"We have come a long way since the days when the administrations of decedents' estates were strictly in the control of ecclesiastical courts. Similarly, we are far removed from the days when the acceptance by an individual of a position as fiduciary was regarded as a high honor, and compensation was looked on with disdain. Today, the administration of trusts is a business, and, like all businesses, in order to continue, it must operate at a profit. This applies with equal force to a corporate trustee, as to an individual fiduciary. Fiduciary responsibilities are usually undertaken, except, perhaps, in cases of small family estates, with the expectancy of receiving adequate compensation for the work to be performed.

"The present method of compensating fiduciaries in this state has been in effect for over a hundred years. Perhaps the time has come when our entire system should be reviewed and revised, as has been done in many other states. . . .

"Under our present system it is not uncommon for executors of estates in which there are no trusts and which are wound up completely, and with comparative ease, within a year of the decedent's death, to actually receive higher compensation than fiduciaries in estates of similar size, where there are continuing trusts and many involved problems. Certainly, consideration should be given not only to the services rendered by the accountant, but also to the results obtained for the beneficiaries, as well as the length or the duration of the trust. Estates with long, continuing trusts should pay more for management than those with short term trusts, or without any trusts at all. A passenger who rides on a train from Philadelphia to Chicago pays much more for his ticket than one who is going only to Harrisburg. Formerly, the commission charged against income was, in itself, regarded as the compensation for managing an estate over a long continuing period after a modest, initial commission on principal was received. Today, however, due to the advanced cost of administering estates and the diminished rate of income, the commissions charged on income are often not sufficient to permit the fiduciary to service the estate at a profit. . . .

"In my considered opinion, the request made by the accountant for $1200. compensation in connection with the Anthony Trust and for $1800. in connection with the residuary trust is fair and entirely reasonable, and, if I had the authority, I would award the sums requested. Such allowance would no more than return to the accountant a fair compensation for services already rendered to this estate. It would in no sense be an overpayment or result in hardship to the estate, even if the trustee resigned tomorrow or the trust terminated in the near future."

Judge Klein then concluded:

"However, after a careful study of the entire prob-

lem, I have reached the conclusion that I am completely without authority to make this award, as the trust has not yet terminated."

The court en banc dismissed the exceptions to Judge Klein's adjudication. Judge Ladner, in a concurring opinion, joined by Judge Bolger, pointed out that even this sizeable record failed to consider important factors such as (1) the trust department's productivity of business; (2) proper adjustment of the cost of trust department space on upper floors of the bank's building, rather than taking a pro rata share of all space; (3) giving credit for income earned on large amounts deposited in the banking department of the trustee by the trust departments of other corporate fiduciaries; and (4) proper allocation of the cost of "Executive Management" to the trust department.

In the instant case the corporate fiduciary had the duty and burden to make a full, frank and complete disclosure of the services rendered, its costs of operation, its overhead properly allocable to its trust department, and all other relevant facts. This should have included, inter alia, all the facts adduced in Williamson Estate, together with those mentioned by Judge Ladner, and a detailed recital of the duties of a trustee today in the light of present security markets, Federal income taxes, State inheritance and estate taxes and Federal estate taxes, personal property taxes, problems of apportionment between principal and income; etc., etc. Such a record was not made in this case. In fact, the evidence presented in the instant case, to say the least, was fragmentary.

It is noteworthy that all of the judges of this court who decided Williamson Estate, supra, indicated that they were of the opinion that additional compensation for ordinary services should be allowed to the trustee who also served as executor. Judge Ladner suggested that a statewide study should be made under the aus-

pices of the Supreme Court. Mr. Justice Stearne, speaking for the majority of the Supreme Court, stated at page 352:

"It may well be that present conditions demand that the system requires general revision. If this be true, such radical change should be made by the *Legislature* and not by the Court. We decline to overrule the host of our decisions over such a long period. We agree with Judge Ladner that even before a change of such magnitude should be enacted by the Legislature, there should be a wide and searching investigation by a legislative committee concerning the entire subject matter, including not only the situation of all corporate fiduciaries but of individual fiduciaries as well."

It seems clear, therefore, that whether by the legislature, by a judge, or by a master appointed by the court, a searching study of a fiduciary's regular, usual duties and costs should be made before the present long established principles for fixing a fiduciary's compensation should be revised, or a flat lump sum should be awarded, as was done by the learned auditing judge in this case.

Accordingly, I would refer this case back to the auditing judge to hold further hearings to afford the trustee and the Corporate Fiduciaries' Association an opportunity to present evidence on these points and in the light thereof to award such compensation to the trustee in this case as is warranted by the evidence adduced, and also to set down principles which would constitute a guide for future cases. In doing so, the auditing judge might well take into consideration the provisions of the Act of July 25, 1963, P. L. 305, providing: "The court shall allow such compensation to the trustee as shall in the circumstances be reasonable and just, and may take into account the market value of the trust at the time of the allowance, and calculate such compensation on a graduated percentage."

Hence, I am constrained to file this partially dissenting and partially concurring opinion.

## Dissenting Opinion

SHOYER, J. — The assertion by the majority of this court that the trustees have failed to adequately prove the reasonableness of the requested $20,000 raises an issue not warranted by this record. Counsel for the single exceptant states the sole issue in his brief as follows: ". . . [T]his is not a case where any objection to the amount of the terminal commission would have been raised if the trustees had not already taken a principal commission as executors. . . . The only issue in this case is whether the statutory rule against two principal commissions by the same accountant (even though acting in different capacities) was constitutionally repealed by the Act of April 10, 1945, P. L. 189, insofar as it relates to pre-1945 trusts."

In the 21 years that this trust has endured, the principal has more than doubled to a current market value of approximately $1,500,000. That an aggregate principal commission at the rate of less than 2.85 percent is not excessive is well within the experience and judicial knowledge of all of us. See cases cited in Hunter O. C. Commonplace Book, vol. I, p. 268, §4(a), et seq.

For this and the additional reasons set forth in my adjudication, I dissent.