## MINCH, In Re.

Ohio Appeals, Eighth District, Cuyahoga County

No. 20306. Decided June 10, 1946.

A. C. Knight, Willoughby, H. L. Deibel, Cleveland, for plaintiff appellant.

Ralph Stickle, Cleveland, Reuel A. Lang, Cleveland, for defendant appellee.

## OPINION

By SKEEL, P. J.

This is an appeal on questions of law from a final order of the Probate Court passing upon exceptions and objections to the final and preceding accounts of the trustee, John B. Cole.

John B. Cole was successor trustee under the will of Anna C. Minch. The provisions of the will of Anna C. Minch relating to the trust were as follows:

One-twelfth part of the residue, less the sum of Fifteen Thousand Dollars, I give and bequeath to my daughter, Sophia F. Steinbrenner and her successors in trust hereby created in trust any part or all of the income therefrom or the income and any part of the principal as in the sole discretion of my said trustee and her successors in trust may be deemed best to be by said trustee expended for the maintenance and advantage of my grandson Philip J. Minch and of his wife or any child the said trustee having full power as circumstances may arise to devote all or any part of the income and principal to the purposes herein mentioned—with full power in her discretion to retain the whole and allow the trust fund hereby bequeathed to her in trust to accumulate until the death of my grandson. Upon the happening of that event

"either the whole or any part of the income and principal of said trust fund which shall remain unexpended for the uses and purposes herein provided shall be divided equally to

any wife or child or children of my said grandson surviving him and if there survive no wife and no child or children, then the said trustee or her successors shall be discharged of the trust by paying the amount so in her or their hands to those persons who shall be the legal heirs of my said grandson in such proportions as they would be entitled to inherit from him."

Captain Philip J. Minch never married, and left surviving him Hattie Davis, a sister; the children of Anna G. Barnes, a sister now deceased; and the children of George H. Minch, also deceased. Mary Cole, wife of the trustee, was one of the children of Anna G. Barnes, and George Steinbrenner, President of the Kinsman Transit Company, hereinafter referred to, was a grandson of Anna C. Minch.

The objectors to the trustee's accounts are the children of George H. Minch who are entitled to one-third of the proceeds of his estate.

The objectors seek to set aside certain sales of stock of the Kinsman Transit Company by the trustee, or for an order compelling the trustee to account for the value of the stock as of the date of the final account and the dividends paid to that date. As was provided by the provisions of the will of Anna C. Minch, the trustee was empowered to sell any and all property held by him in trust, for the purpose of providing the necessary funds "for the maintenance and advantage of * * * * Philip J. Minch * * *." The power of the trustee therefore to make sales to procure the funds necessary for the maintenance of the beneficiary was absolute. However, in exercising this power the trustee, in two separate transactions, sold 31 shares of Kinsman Transit Company stock to his wife and also in two separate transactions sold 79 shares to his father. The record discloses that The Kinsman Transit Company was the creation of the Minch family. Its stock was not listed on any stock exchange, was not widely distributed and was held for the most part within the family.

In taking care of the needs of the beneficiary of the trust, Philip J. Minch, it was the practice of the trustee to make sales when requested by him. From July 7, 1939 until the date of the death of Philip J. Minch, which took place on April 13, 1944, the trustee made the following sales of Kinsman Transit Company stock.

7/11/39—54 shares @ $58.00 per share to Bates. & Company, stock brokers

7/11/39—6 shares @ $58.00 per share to Mary Cole (trustee's wife)

8/1/42—58 shares @ $100.00 per share to George Steinbrenner (President of Kinsman Transit Co and cousin of trustee's wife)

8/1/42—42 shares @ $100.00 per share to Frank A. Cole (trustee's father)

2/29/44—17 shares @ $108.00 per share to George Steinbrenner

2/29/44—37 shares @ $108.00 per share to Frank A. Cole

2/29/44—25 shares @ $108.00 per share to Mary Cole

It is to be noted that in each transaction for the sale of stock to the trustee's father or wife, sales were made to others at the same time and for the same price. There is no valid objection by the exceptors that stock sales were not for the best price obtainable. In fact the record discloses the care with which the trustee determined what the market price should be on every occasion when sales were made by calling brokers and others who, because of their knowledge and experience, were able to give sound advice upon the subject.

We are therefore, faced with the direct question as to whether or not the making of sales of trust property by a trustee to his wife or father to secure funds needed in carrying out the purposes of the trust, constitutes self-dealing whereby residuary beneficiaries may seek to avoid such sales and require the trustee to account to them for the value of the stock at the time they became entitled to a distributive share.

The obligations of a trustee in guarding the interests of a trust estate are well stated in the case of **Caldwell v Caldwell, 45 Oh St 513,** where the court on **page 518** said:

"The principle is fundamental that trustees are to be held rigidly within their powers in the execution of the trusts confided to them and that they shall not become personally interested in the subject of the trust."

Self-dealing with the assets of the trust by a trustee or any personal gain or profit (except such compensation as is earned because of the services rendered) either directly or indirectly, accomplished or any attempt to gain a personal ad-

vantage in carrying out his duties, is universally held to be in conflict with the fidelity with which a trustee must be motivated in the administration of the trust.

In holding a trustee to a strict accountability against self-dealing, the earlier decisions of the courts almost universally held that a sale of trust property by a trustee to his wife was voidable as a violation of this rule. The reason for this view was based for the most part upon the limited ability of the wife under common law to own and hold property separate and apart from her husband and because it was considered that any benefit received by the wife would inure to the benefit of the husband. Later developments of the independent property rights of married women have materially weakened the basis upon which such sales were held to be avoidable, but nevertheless, courts for the most part have been unwilling to change the rule.

In Bogart on Trusts & Trustees, Vol. 3 §484 at page 1520 the author says:

"If the trustee sells to his own wife, the courts have tended to treat the transaction as subject to avoidance. The common law identity of husband and wife, the fact that a benefit to the wife would generally inure to the advantage of the husband, and the difficulty of uncovering collusion between them, all argue in favor of treating the sale to the trustee's wife as equivalent in legal effect to a sale to himself. The same doctrine should control if a woman who is a trustee sells to her husband. In the case of more distant relatives, the courts have been inclined to require positive proof by the cestui that there was actual collusion or fraud."

And in Restatement of the Law of Trusts, Vol. 1, §170, page 434, the rule is stated as follows:

"If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself. The mere fact, however, that the purchaser is related to the trustee does not make the sale improper. If, however, it is shown that the trustee in making the sale was improperly influenced by his relationship to the purchaser, or even his friendship for the purchaser, so that he sold the property for less than he could have obtained from others, or otherwise abused his discretion in making the sale, he commits a breach of trust * * * * *."

Also in Scott on Trusts, Vol. 2, §170.6 page 867:

"Where a trustee sells trust property to his wife without any agreement or understanding that she will hold it for or reconvey it to him, there is a difference of opinion on the question whether the sale is voidable. In some cases it is held that the mere fact that the trustee's wife is the purchaser is enough to make the sale voidable; in others it is held that that fact is merely some evidence that there was an understanding that she was to buy the property for him or that the sale was made at an inadequate price in order to favor her but that the mere fact that the purchaser was the trustee's wife is not of itself a sufficient ground for avoiding the sale if in all other respects it is proper. The question is the same where a female trustee sells trust property to her husband. On the other hand, the mere fact that the purchaser is related to the trustee is not of itself a sufficient ground for avoiding the sale. It is, however, a circumstance to be considered in determining whether the sale was made in the best interest of the beneficiaries, and if on all the facts it appears that the trustee sold the property for less than he could have obtained from others or otherwise abused his discretion in making the sale, the trustee is guilty of a breach of trust, and the sale can be set aside unless the purchaser paid value without notice of the breach of trust."

We are not disposed to deviate from the holding that the sale of trust property by a trustee to his wife constitutes constructive fraud and is voidable without proof of actual fraud on the theory of self-dealing, but we cannot extend such a doctrine to include sales of trust property by a trustee to other persons who bear a family relationship to him. Every sale of trust property by a trustee when brought into question must be supported by the trustee. The burden is upon him to show that it was made under the authority conferred upon him by the trust and that it was made in the utmost good faith for the best price obtainable and without benefit to himself. But no legal presumption of self-dealing or bad faith arises simply because the sale of trust property was made by the trustee to his father. In this case the trustee introduced substantial evidence of the care exercised in determining the true value of the securities sold and the manner in which the sales were made. The objectors failed to pro-

duce any evidence that there was a breach of duty by the trustee in making such sales other than that the purchaser was the father of said trustee and therefore such sale must be sustained.

The order of the Probate Court requiring the trustee to account for the value and income, less the sale price, of the stock which the trustee sold to his wife, to-wit, 31 shares, is affirmed and that part of the order which directs the trustee to account for the value and income, less the sale price, of the stock sold to the trustee's father, is reversed and the appellees objections to the trustee's accounts is to that extent ordered overruled.

MORGAN J, LIEGHLEY J, concur.