[Civ. No. 13842.   First Dist., Div. One.   Sept. 13, 1948.]

Estate of ISAAC L. ETTLINGER, Deceased. CLARE ETT-
LINGER, Appellant, v. MELVILLE MARX, as Execu-
tor, etc., et al., Respondents.

Single & Watt for Appellant.

Claude N. Rosenberg, Bacigalupi, Elkus & Salinger, John
Elliott Cook and Sloss & Eliot for Respondents.

WARD, J.—This appeal involves an order refusing to set
aside an order approving an assignment by Clare Ettlinger

of a residuary interest in the estate of Isaac L. Ettlinger, deceased, pursuant to Probate Code, section 1020.1. Clare Ettlinger, the appellant, is the decedent's widow. Under his will she received a "home on Austin Avenue, Atherton, California," and a one-fourth share in the residue of the estate. The testator's nephew, Melville Marx, was appointed executor and received letters testamentary. A prior wife, Millicent Sears Ettlinger, held a property settlement entitling her to $250 per month until she should remarry or die.

Following the filing of a notice of motion for an order approving an assignment, a hearing was held at which Clare Ettlinger testified that by a recent order of distribution she had received certain property in accordance with the terms of the will; that Millicent Sears Ettlinger had been in receipt of $250 a month and that in the probable course of events she would continue to receive that amount for "some 18 or 20 years"; that this probably would reduce Clare Ettlinger's income to "rather a nominal" sum; that she had been advised by her counsel that it would be to the best interest of the witness to sell all of her interest in the estate; that she had "also employed an auditor and a certified public accountant, who has done considerable work in connection with the books of the estate of Ettlinger, and the books of the Rio Farms Corporation, and he has submitted to you a complete analysis of holdings both of the estate and of the Rio Farms Corporation, and you have had the benefit of analyzing those and consulting personal friends of yours, besides the advice of counsel"; that $25,000 net had been offered by Hattie Straus and Gertrude Marx for her interest, from which certain attorney fees would be deducted. The following evidence also appears in the record: "Q. And you appreciate that when you have effected the assignment and have accepted the money payment that it calls for, that you will have then surrendered and finally parted with all of your right, title and interest of every kind and character to this estate? A. Yes, sir." Whereupon the court on October 22, 1946, approved the assignment and allowed a distribution of $1,000 to the residuary legatees and the widow's assignees.

The executor subsequently filed the second and final account and petition for final distribution, which named the assignees of Clare Ettlinger as the persons entitled to receive her interest. On October 11, 1947, opposition to the Final Account and Distribution was filed by Clare Ettlinger, who claimed that the assignment of her interest "is unfair, unjust and

inequitable'' and that she was induced to execute and consent to the assignment under duress, undue influence, misrepresentation and without full knowledge of the facts. At the same time she filed her ''Affidavit in Support of Motion to Set Aside Assignment.'' Referring to entering into the agreement to assign her interest, ''affiant alleges that she was induced to do so upon the representation, that the mortgage upon the real property of said estate, given to her by will, and which said property is her home, was about to be foreclosed; that payments upon said mortgage could not be made, and that she would lose her home and interest thereby; and that affiant had no funds other than her interest in said estate, wherein and whereby said mortgage could be paid; further, that affiant alleges she was not adequately informed of the condition, assets, and liability of said estate, but that it was represented to her that said estate was in a precarious condition and that it was impossible to reach any settlement with one MILLICENT SEARS ETTLINGER, a creditor of said estate, by reason of which said estate could not be closed and its assets distributed; that due to said situation, affiant would be unable to realize her distributable share of said estate, and in the future to adequately protect her home from foreclosure and that she would lose her interest thereby; that affiant relied upon such representation and was induced thereby to execute said documents and sell her interest and to petition this Court for confirmation thereof; that affiant executed said agreements and petitioned said Court solely by reason of said representations, and for no other reason; that affiant is informed and believes and therefore alleges that all of said representations were false; and affiant is informed and believes and therefore alleges, that her residuary interest in said estate actually far exceeded the sum of $25,000.00.''

Attorneys for the assignees filed a motion to strike from the record the opposition of Clare Ettlinger to the final account and the affidavit in support of the motion to set aside the assignment. The probate court denied the motion to set aside the assignment and heard Clare Ettlinger's objections to the distribution of the estate. In answer to the question ''Now, tell me, Mrs. Ettlinger, what is your objection to the account and to the Court's making an order for final distribution of your husband's estate?'' she answered: ''Because I have been defrauded of my rightful legacy in my husband's estate.'' The testimony reveals that her claim that she had been defrauded was based upon her assertion that her previous attorneys had

misrepresented to her the financial condition of the estate and upon the fact that as the widow she had not had "an accounting in six years." The following testimony appears: "THE COURT: You do not contend that the estate has not been appraised and an inventory made, and that there is something which has been left out of the estate that is in it? MR. DEWAR [attorney for appellant]: No, nothing of that kind. THE COURT: If you had contended that the estate had been undervalued, or something of that kind, or there is some incorrect statement, then you should specify your objections on that ground. . . . THE COURT: Well, of course, the Court will make a minute order. The grounds of opposition were overruled, and the order of the account is approved, and decree and distribution therewith." From the decree of distribution and from all the orders and decrees therein Clare Ettlinger filed a notice of appeal "in propria persona."

Certain points raised by respondents may be eliminated. The basic contentions made upon appeal are "that [1] at the time of the assignment of her interest in the estate to the mother and the aunt of the executor, the executor then secretly intended to purchase an annuity for Millicent Sears Ettlinger and thus free the estate for distribution to the beneficiaries, and [2] that the value of the estate had been grossly undervalued by the executor who was both the president of the corporation, whose stock was the major part of the estate, and also was the trustee of a '20-year voting trust controlling the stock in the estate.' "

The original order approving the assignment was appealable, but no appeal was taken therefrom, and the present proceeding was not instituted until nearly a year after that order was made and nearly 10 months after the annuity was purchased.

The record before this court does not show evidence of fraud that requires the order approving the assignment to be set aside. (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728].) On the contrary, there is evidence that the life expectancy of Millicent Sears Ettlinger, the financial condition of the Rio Farms stock, and the facts surrounding the voting trust, were questions upon which appellant was advised by her own attorneys. In this connection it should be noted that the appellant's briefs do not mention any evidence showing that at the time of the court's approval of the assignment the executor secretly intended to purchase an annuity for Milli-

cent Sears Ettlinger, or that he grossly undervalued the estate. The final account merely shows that on a date two months after the approval of the assignment the estate paid an insurance company for "M. Sears Settlement." As to the second contention, the estate was valued by appraisers and not by the executor.

Appellant's opening brief states that she was relying upon the statements of the executor and the attorney for the executor, that an annuity would not be purchased for Millicent Sears Ettlinger, and that therefore the estate would not be distributed until the death of Millicent Sears Ettlinger, who had a life expectancy of 20 years. However, the only evidence which appellant quotes to support this contention is the testimony of the attorney for the executor given after the approval of the assignment and on petition for a ratable distribution that "If I were a beneficiary here, I would not consider buying an annuity for a split second." The testimony given by the attorney was an attempt to satisfy Millicent Sears Ettlinger and her attorney that her interest as a creditor of the estate would not be jeopardized by a ratable distribution of $10,000. The assignment had been previously approved.

Neither Civil Code, section 2235, nor Probate Code, section 583, supports the contention that the purchase of an interest of a beneficiary of an estate by the mother and the aunt of the executor is presumed to be a fraudulent transaction and thus may be classified as a fraud perpetrated by the executor, requiring the order approving the assignment to be set aside. An executor may not purchase property of an estate, or any claim against an estate, directly or indirectly, nor be interested in any such purchase. It should be noted that Probate Code, section 583, does not apply to the sale by a beneficiary of his interest in an estate. There is no evidence that the executor directly or indirectly purchased any interest in the estate. The transaction was authorized by order of the probate court after a hearing on the petition to assign. (54 Am.Jur. § 313, p. 248, § 466, p. 370.) Clare Ettlinger testified: "I have been defrauded in my husband's estate through false representations of my previous attorneys."

"It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived

of a fair opportunity fully to present his case." (*Jorgensen v. Jorgensen, supra,* p. 19.) In the present case Clare Ettlinger was not precluded from having her day in court or from fully presenting her application to assign her interest in the estate. Under such circumstances there was no evidence of fraud. ▮ However, even if the evidence raised an inference of fraud such fraud would be intrinsic and not extrinsic and therefore not a ground for relief in this type of action. (*Jorgensen v. Jorgensen, supra.*)

The decree of distribution entered on November 10, 1947, is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 8, 1948.