William MAUCH, Plaintiff in Error,

v.

Ruby MAUCH, Individually and as Administratrix of the Estate of Fred Mauch, Deceased, Defendant in Error.

No. 43158.

Supreme Court of Oklahoma.

June 22, 1971.

Erwin & Erwin, Chandler, for plaintiff in error.

James & Butts, Stroud, for defendant in error.

BLACKBIRD, Justice.

The issues presented in this appeal pertain to a widow's allowance in the administration of the intestate estate of Fred Mauch. At Mauch's death on June 17, 1963, his brother, William, and his widow, Ruby, were his only surviving heirs. Upon the petition Ruby Mauch thereafter filed therefor, she was issued letters of administration on July 10, 1963.

In the Fred Mauch estate's general inventory and appraisement, which Ruby filed on the same day she filed a petition for a widow's allowance, the intestate's estate, including an undivided one-half interest in the quarter section of Lincoln County land involved in Mauch v. Mauch, Okl., 418 P.2d 941, plus the cattle involved in Lincoln County District Court's Cause No. 18128 (appealed to this Court as Mauch v. The First National Bank of Prague, a corporation, et al., 38 O.B.J. 2424), was represented as having a total value of $13,-725.46, which was in addition to an undivided one-half interest in 80 acres of Tulsa County land, described in a separate inventory and appraisement and valued therein at $6,000.00. The administratrix' petition for the widow's allowance, filed on January 2, 1964, asked that this be fixed at the sum of $300.00 per month and represented that, after the four months' notice to creditors, claims against the estate in the amount of $12,435.76 had been allowed and that the Prague Bank's claim for $3,842.50 was not acted upon within ten days after it was filed. The widow's allowance was fixed by an order entered the same day, at $275.00 per month "during the pendency of the probate proceeding * * *".

After Ruby had been administratrix of the intestate's estate more than four years, she filed a report and accounting in the administration proceedings, listing items of money received totaling $24,906.31° (of which all except a few hundred dollars was derived from the sale of the intestate's interest in the above mentioned Tulsa and Lincoln County real estate). In her accounting, the administratrix credited herself with items of disbursement totaling $20,880.14, including a total of approximately $12,000.00 in monthly payments of widow's allowance. The cash balance shown to be in the administratrix' hands was $3,026.71; but her accounting represented that no fees had been paid for her services, or that of her attorneys; and said accounting included a prayer that a hearing be held to determine the amount of such fees that should be paid out of this balance of funds on hand.

On the same day (February 14, 1968), the District Court in Cause No. 18128, supra, found that the administratrix still owed a balance of $2,168.89 on the judgment theretofore rendered in May, 1964, against her in favor of the Prague Bank.

Twelve days later, the Bank applied for an order of the probate court requiring the administratrix to pay this $2,168.89 out of estate funds; and, on the same day, William Mauch, plaintiff in error herein,

filed his motion "TO VACATE OR MOD-IFY * * *" the Court's previous order for the widow's allowance. In said motion, he alleged, in substance, that, to the extent that said order authorized monthly payments of more than $100.00 per month over a period of more than one year, it enabled the widow to obtain an unfair amount of the estate and constituted an unreasonable allowance. Mauch also filed objections to the administratrix' above mentioned report and accounting, and to her application for an administratrix' fee and a fee for her attorneys.

On the same day, the Court entered its order overruling said objections and motion to vacate or modify, and approving the administratrix' report and accounting, but terminating the widow's allowance. The order also directed the administratrix to pay the aforementioned judgment balance of $2,168.89 out of the funds in her hands. The order also determined that the administratrix' attorney was entitled to a "Partial fee" of $1,800.00 and directed her to pay it. Decision as to a further fee for said attorney was reserved pending subsequent hearing on a final report (which presumably the administratrix would subsequently file).

Both Mauch, hereinafter referred to as "protestant", and Ruby Mauch, the administratrix, appealed to the District Court from said County Court order. The administratrix' appeal was from that part of the order that directed her to pay the balance of $2,168.89 due on the Prague Bank's judgment. This appeal was thereafter dismissed on motion of protestant.

Protestant's appeal to the District Court was from that part of the County Court's order refusing to vacate its previous January, 1964, order for the widow's allowance and refusing to supersede retroactively said allowance of $275.00 per month during the pendency of the administration proceedings, with an allowance of only $100.00 per month for a period not to exceed one year.

On the protestant's appeal, the District Court, after a trial de novo, rendered judgment approving the administratrix' report and accounting, and approving the $1,800.-00 partial fee originally fixed, as aforesaid, by the County Court, for the administratrix' attorney, and dismissing protestant's appeal from that part of the County Court's order overruling his motion to vacate the widow's allowance order as to payments that had accrued under it before said Court's later order terminating the allowance after the January, 1968, payment.

After the District Court overruled protestant's motion for a new trial, he lodged the present appeal.

In and under his "FIRST SPECIFICATION", protestant contends that the District Court, hereinafter referred to as "trial court", erred in refusing to vacate the County Court's previous order for the widow's allowance of $275.00 monthly, during the pendency of the administration proceedings, as an improper authorization of an excessive amount. He tacitly concedes that there are no statutory limitations upon the amount of money a widow may take out of her deceased husband's estate as such an allowance, except those appearing in Tit. 58, O.S.1961, § 314, which authorizes widows' allowances. Accordingly, in his first argument, he attempts to show that the Fred Mauch estate was an "insolvent estate" within the meaning of that term as used in said statute's provision limiting the period in which such an allowance may be authorized "during the progress of the settlement of the estate * * *", to "not * * * longer than one year after granting letters testamentary, or of administration." To support his argument, protestant points to the estate's total appraised value of $19,725.46, as shown in the aforementioned inventories and appraisements and to the representations made, in the administratrix' petition for the widow's allowance, concerning said estate's indebtedness. By using $16,277.96 as the amount of the estate's known indebtedness, at the time the petition for the widow's allowance was filed, and deducting from the difference of $3,347.50 between this figure and the estate's inventory value,

the inventory value of a Chevrolet Pickup Truck, which, after Ruby had exercised the choice given her by Tit. 84, O.S.1961, § 232, the Court set apart to her as the surviving widow's exclusive property, plus $1,250.00 which protestant says was the appraised value of certain other items which the Court (more than two months later) set apart to Ruby as exempt personal property, protestant attempts to show that the estate was actually insolvent, in that its net value was less than $2,000.00, and insufficient, at that time, to pay the monthly widow's allowance for a year, or the expense of administering the estate, with a fee for the administratrix and her attorney included.

■ We find no merit in protestant's argument. Assuming arguendo, (contrary to our tabulation of the total sum of the claims appearing in the record as being less than $13,000.00) that the net assets of the Fred Mauch estate (as it had been appraised), at the time Ruby filed her application for the widow's allowance, was only $3,347.50, we are not convinced that it was then an "insolvent estate" within the meaning of that term as used in Section 314, supra. But be that as it may, if views analogous to some of those expressed in Salter v. Continental Casualty Co., 194 Okl. 26, 146 P.2d 824, are applicable here, we do not think protestant, after waiting more than four years after the order for the widow's allowance was entered, before objecting to it, should be able to support his argument that the estate was insolvent, at the time it was entered, by using valuations that later were proved unrealistic and too low, by actual market value standards. (As the administratrix points out, the one-half interest in the Tulsa and Lincoln County properties, that were originally appraised at $6,000.00 and $8,000.00, respectively, were each later sold for several thousand dollars more than these appraised values.) We therefore decline to hold that the Fred Mauch estate was ever an "insolvent estate" within the meaning of this statute.

■ Protestant next refers to the provision of said statute that: "The court may in its discretion make such *reasonable* allowance out of the estate *as shall be necessary for the maintenance of the family,* according to the circumstances, * * *". (Emphasis ours.) Protestant states that $275.00 per month was not a reasonable allowance "as shown by" an offer of proof he made at the trial de novo. This offer was to show that "the reasonable and ordinary expenses of a family of two, during the years 1963 to 1968, were only $75.00 to $100.00 per month." Protestant does not contend the trial court erred in rejecting his offer. Therefore, the offer cannot be considered to support protestant's contention that the amount of the monthly payment authorized by the widow's allowance order was unreasonable. The offer of proof wholly failed to discharge protestant's burden of proof on that point. We agree with protestant as to the purpose of a widow's allowance, but he has failed to show that the one ordered here did not serve that purpose, and we specifically reject his contention that, without proof, it is apparent that the size of the estate (in itself) made $275.00 an unreasonable amount for monthly disbursement as the widow's allowance in this case.

■ Relative to the more than four-year period over which the administratrix' reports showed she had credited herself with monthly disbursements of the widow's allowance, protestant says she has used the litigation hereinbefore mentioned (Mauch v. Mauch, and Mauch v. First National Bank of Prague, a corporation, et al., supra) "as an excuse for delay in the administration proceedings and continuing the payment of the exorbitant widow's allowance." The administratrix, on the other hand, says such delay was not occasioned by any negligence on her part, but was largely due to protestant's instigation of the appeals referred to. And she points out that she filed her accounting the next month after this Court's mandate in the latter appeal was received on January 3, 1968. We find no merit in protestant's

charges of calculated delay against the administratrix.

■ Protestant also says the order for the widow's allowance was made without notice; but he does not cite any provision of our statutes requiring such notice; and, as pointed out by the administratrix, this Court said in Salter, supra, that, according to the decisions therein referred to, no such notice is necessary, unless "expressly required by statute; * * *".

As we have rejected protestant's contention, under his "FIRST SPECIFICATION" that the Fred Mauch estate was insolvent at the time the widow's allowance was fixed, we find it unnecessary to discuss his "SECOND SPECIFICATION".

Under his "THIRD SPECIFICATION", protestant contends that he did not know Ruby was paying herself the widow's allowance, except for the first eleven months after the order was entered, and he says she obtained the order by misrepresenting that $300.00 per month was a reasonable amount for that purpose. As already indicated, the record does not support these statements; and we find no merit in protestant's argument.

■ Under his "FOURTH SPECIFICATION", protestant refers to Ruby Mauch's testimony at the trial de novo, showing that, after she elected to take the Tulsa County real estate in the District Court action protestant instituted to partition it, and she bid it in at a private sale, she later sold it at a profit of $12,000.00. Protestant contends that because Ruby was administratrix of the intestate's estate, she was prohibited by Tit. 58, O.S.1961, § 496, from making this purchase; and he further contends that, having made that profit, she should have included it in the last report and accounting she filed as administratrix. Ruby contends that since the partition sale was one over which she had no control as administratrix, there was no legal prohibition against her purchase of the property at such sale. We agree. We think that Ruby, in her capacity as an heir to an undivided one-half interest of the intestate's undivided interest in said property, had a perfect right to exercise the right of purchase given her by our partition statutes, without regard to her position as administratrix of the intestate's estate. We therefore find no merit in protestant's arguments under his fourth and final "SPECIFICATION".

As we have found, in protestant's arguments, no cause for reversing the trial court's judgment, said judgment is hereby affirmed.

DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, HODGES, LAVENDER and McINERNEY, JJ., concur.