Martha Jo McDonald **CULBERTSON**, Mary Laundblade, William McDonald, Robert McDonald, Baylass Morris McDonald, Jr., James McDonald, George McDonald, Michael McDonald, Mary Sue Jeffries, Colleen McDonald and Brian McDonald, Plaintiffs,

v.

George H. McCANN and M. Kathryn Wood, Defendants.

No. 58770.

Supreme Court of Oklahoma.

May 17, 1983.

As Corrected May 19, 1983.

S. Paul Hammons, John J. Breathwit, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for plaintiffs.

Robert W. Nelson, Ramey & Nelson, Yukon, for defendant, George H. McCann.

Michael C. Stewart, William J. Bergner, Stewart & Elder, Oklahoma City, for defendant, M. Kathryn Wood.

OPALA, Justice:

Certified to us under the Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1601 et seq., are the following first-impression questions:

"1. Does 58 Okla.Stat. § 496 prohibit an Executor from selling property of the estate which he represents to his sister, where the sale is otherwise not subject to objection?

2. If the answer to question 1 above is in the affirmative, would such a sale be a fraudulent sale on its face without the need for any evidence of fraud in the sale?

3. 58 Okla.Stat. § 492 provides that an Executor who fraudulently sells any real estate of a decedent is liable in '... double the value of the land sold, as liquidated damages, to be recovered in an action by the person having an estate of inheritance therein.' When a Plaintiff does not seek to set aside the sale but seeks only money damages, should the Executor be given credit for the amount of money received by the estate from such fraudulent sale?

4. May an heir of an estate who recovers 'liquidated damages' from an Executor pursuant to 58 Okla.Stat. § 492 also recover punitive damages?"

We hold (a) 58 O.S.1981 § 496 does not prohibit an executor from selling property of the estate which he represents to his sister, where the sale is otherwise not subject to objection; (b) when a plaintiff does not seek to set aside the sale but seeks only money damages, the executor should be given credit for the amount received by the estate from such fraudulent sale and (c) an heir who recovers "liquidated damages"

from an executor pursuant to 58 O.S.1981 § 492 may not also recover punitive damages.

## FACTS

The defendants are George H. McCann [Executor], executor of the estate of James S. McDonald [Decedent], and M. Kathryn Wood [Sister], sister of the executor. Their mother was the sister of the decedent. The dispute centers around the sale of certain real property in the estate by the executor to Claude Ellison [Ellison] who received an executor's deed. Shortly thereafter, Ellison and his wife conveyed the property to the executor's sister.[1] Plaintiffs, heirs of the decedent [Heirs], brought suit in federal court seeking money damages, including punitive damages, for fraudulent conveyance and breach of fiduciary duty.

## I.

### SCOPE OF § 496

There is no Oklahoma law on whether 58 O.S.1981 § 496,[2] which proscribes self-dealing by an executor, prohibits the sale by an executor to his sister where the sale is otherwise not subject to objection. The statute forbids an executor's direct or indirect acquisition of interest in the estate. The heirs argue that the statute interdicts an executor's sale to his sister. They analogize to those cases where this court had held that the statute prohibits an executor from selling to his spouse. They submit that because of the intimacy of relation between a brother and a sister, the executor-brother will presumptively be "interested" in a sale to his sister. The heirs assert that actual fraud or injury is irrelevant to violation of the statute. The statute is aimed at preserving the fiduciary's fidelity

---

1. The federal court noted that certain disputed facts remain unresolved: (1) whether the executor knew his sale to Ellison was actually a sale to his sister; (2) whether the executor had any personal interest in the sale or purchase of the property; (3) whether the sale by the executor was for adequate consideration and (4) whether the sale to Ellison and/or the sister was in fact fraudulent.

2. The terms of 58 O.S.1981 § 496 provide: "No executor or administrator must directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale." 58 O.S.1981 § 833 makes this section applicable to guardians' sales.

and therefore any transaction in which he self-deals is void. When he sells to his sister he is presumptively self-dealing. The heirs argue also that the duties of an executor are substantially similar to those of a trustee and the trust statute prohibiting self-dealing by a trustee[3] is *in pari materia* with the probate statute regulating self-dealing by an executor.[4] Since the trust statute specifically prohibits a trustee's sale to a sister, the heirs argue the probate statute does also.

The executor and the sister argue, on the contrary, that the standard to be applied in evaluating the fairness of the sale is whether there is a conflict between the personal interest of the executor and his fiduciary duty to the estate. They contend that the cases prohibiting a sale to a spouse are inapposite because, unlike spouses, siblings have no equitable interest in each other's property and are not forced heirs of each other. They do not share the intimate relationship enjoyed by husband and wife. They also contend that 58 O.S.1981 § 496 is clear on its face and that there is no need to resort to the trust statutes for its interpretation. Executors and trustees are two distinct legal creatures and the statutes governing each are not *in pari materia*.

■ A transaction falling under § 496 is not always void, but rather voidable at the discretion of the court if it finds the transaction is not covered by a judicial exception to § 496.[5] This case does not compel us to add another exception to § 496, though, because § 496 has no automatic application to a sale to a sibling.

■ Oklahoma, consistent with the general rule, prohibits an executor or guardian from selling property of the estate, either directly or indirectly, to a spouse.[6] The reason for this prohibition is two-fold. First, an executor has a pecuniary interest in a sale to a spouse. In case of death of the one, the other would inherit not less than one-third of his or her estate.[7] There is also an intimacy of relation and affection between spouses and a mutual influence and desire for their common welfare that precludes either from occupying a disinterested position in a transaction involving the other.[8]

The heirs argue that the same affection and intimacy of relation exists between siblings and that therefore a sale by an executor to his sister is presumptively fraudulent. We can find no authority for such a proposition and we do not think it comports with sound policy. Unlike spouses, siblings are

---

3. The terms of 60 O.S.1981 § 175.11 provide in part: "No trustee shall directly or indirectly buy or sell any property for the trust from or to itself or an affiliate, ... from or to himself, a relative, employer, partner, or other business associate...". For the purposes of the Oklahoma Trust Act, "relative" is defined in 60 O.S.1981 § 175.3(D) as: "a spouse, ancestor, descendant, brother, or sister, by blood or adoption."

4. 58 O.S.1981 § 496.

5. *Matter of Estate of Gaylord,* Okl., 552 P.2d 392, 397, 6 A.L.R. 4th 778 [1976]. Oklahoma case law creates exceptions to § 496. An exception has been permitted where the testator expressly gave an executor the option to purchase an interest in the estate, when no conflict arose between his personal interests and fiduciary duties. *Lanie v. Lanie,* Okl., 499 P.2d 401, 404 [1972]. An administrator was permitted to purchase real property at a judicial sale where he had no part in procuring the sale and exercised no control over the price or terms of the sale. *Turner v. Kirkwood,* 49 F.2d 590, 595

[10th Cir.1931]; *Mauch v. Mauch,* Okl., 486 P.2d 708, 712 [1971]. More recently, this court permitted an executor to sell stock, which was an asset of the estate, to a corporation in which he had a controlling interest pursuant to the corporation's exercise of a contractual right of first refusal. The court determined that no fraud was involved and the price was equitable. *Estate of Gaylord,* supra.

6. *Crume v. Rivers,* 178 Okl. 363, 61 P.2d 862, 864 [1936]; *Gay v. Williams,* 102 Okl. 37, 226 P. 88 [1924]; *Brooks v. Tucker,* 83 Okl. 255, 201 P. 643, 644 [1921]; *Winsted v. Shank,* 68 Okl. 269, 173 P. 1041 [1918]; *Langley v. Ford,* 68 Okl. 83, 171 P. 471, 473 [1918]; *Chastain v. Pender,* 52 Okl. 133, 152 P. 833 [1915]; *Burton v. Compton,* 50 Okl. 365, 150 P. 1080, 1081–1082 [1915].

7. 84 O.S.1981 § 213.

8. *Burton v. Compton,* supra note 6; *Chastain v. Pender,* supra note 6.

not forced heirs of one another.[9] The pecuniary interest element does not exist because their fortunes are not necessarily interdependent. There may be a relation of affection between them, but that alone does not raise a presumption of fraud. A family transaction may call for closer scrutiny, but an automatic prohibition would unduly and needlessly hamper the executor.

A survey of cases and authorities, both from other jurisdictions and from our own, indicates that when an executor sells to some close relative, other than the spouse, that circumstance does not, without more, void the transfer.[10] The majority of decisions accede to the view that the relationship is merely one factor to be considered. They hold for the fiduciary where the transaction is found to be fair [11] and against him if it is fraudulent.[12] In each of the cases, where the court struck down a transaction with a close family member, the court found that the executor or guardian personally benefited.

In *Plant v. Schrock*,[13] a guardian executed a deed to a "middleman" who immediately reconveyed the property to the guardian's sister-in-law. She mortgaged it to procure a loan. The court found that the middleman did not pay the purchase price for the land and that he was only acting as a pretended purchaser for the guardian. The sister-in-law also did not pay the purchase price but merely took legal title at the guardian's request. The guardian possessed the land at all times. The court found that the transactions were a result of a secret conspiracy between the guardian, the sister-in-law and the middleman and therefore declared the sale was voidable.

California's self-dealing statute is substantially the same as Oklahoma's.[14] In *In Re Denlinger's Estate*,[15] the executrix sold estate property at a duly noticed private sale to her daughter and son-in-law. The decedent's heir objected to the sale on the grounds that it was conducted contrary to the California self-dealing statute and voidable because of, among other things, the

**9.** 84 O.S.1981 § 213.

**10.** See generally Scott on Trusts, Vol. 2, § 170.6 at p. 867; See Annot. in 131 A.L.R. 990.

**11.** *Setaro v. Pernigotti,* 105 Conn. 685, 136 A. 571, 572 [1927] (sale to daughter); *In Re Ettlinger's Estate,* 87 Cal.App.2d 494, 197 P.2d 163, 166 [1948] (sale of heir's interest to mother and aunt); *In Re Denlinger's Estate,* 98 Cal. App.2d 130, 219 P.2d 495, 496 [1950] (sale to daughter and son-in-law); *In Re Minch's Will,* 71 N.E.2d 144, 146–147 [Ohio App.1946] (sale to father, mother and mother's cousin); *Robinson v. Ham,* 215 N.C. 24, 200 S.E. 903, 905 [1939] (loan to uncle and father); *Pettigrew v. Gamache,* 104 N.H. 530, 191 A.2d 92 [1963] (sale to son); *Oliphant v. Carr,* 103 N.J.Eq. 165, 142 A. 430 [1928], *aff'd,* 106 N.J.Eq. 283, 151 A. 907 [1930] (sale to daughter); *Grandy v. Robinson,* 180 Or. 315, 175 P.2d 463, 467–468 [1946] (lease to son-in-law); *Cain v. McGeenty,* 41 Minn. 194, 42 N.W. 933 [1889] (sale to son); *Earney v. Clay,* 516 S.W.2d 59, 64–65 [Mo.App. 1974] (sale to parents); *Anderson v. Bean,* 272 Mass. 432, 172 N.E. 647, 653–654, 72 A.L.R. 959 [1930]; *Cf. Turner v. Turner,* 34 Okl. 284, 125 P. 730, 734 [1912] (sale to brother and to self upheld as necessary to protect interests already owned).

**12.** *Pevehouse v. Adams,* 52 Okl. 495, 153 P. 65, 66 [1915] (sale to children for grossly inadequate price); *Plant v. Schrock,* 102 Okl. 97, 227 P. 439, 441 [1924] (sale through third party to sister-in-law for no consideration for purpose of procuring loan); *Prentice v. Townsend,* 143 A.D. 151, 127 N.Y.S. 1006, 1007 [1911] (sale to brother who immediately reconveyed to executor); *Carter v. Burr,* 46 N.J.Eq. 134, 18 A. 463, 464 [N.J.1889] (sale to self for son for inadequate consideration); *In Re Istocin's Estate,* 126 Pa.Super. 158, 190 A. 382, 386 [Pa.1937] (sale to brother/agent who reconveyed to executor); *Miller v. Rich,* 204 Ill. 444, 68 N.E. 488, 491 [1903] (sale to son who conveyed to mother who reconveyed to husband/administrator for inadequate consideration furnished by administrator); *Thiel v. Cruikshank,* 96 Mich. App. 7, 292 N.W.2d 150, 151–152 [1980] (sale of ½ interest for inadequate consideration to son and simultaneous acquisition of ½ interest by executor, with subsequent resale of combined interests to third party whereby executor personally benefited); *Shaw v. Tackaberry,* 29 Ont.L.Rep. 490, 15 D.L.R. 475 [1913] (sale through agent to sister in satisfaction of executor's own debt); *Buckingham v. Wesson,* 54 Miss. 526 [1877] (sale to son for executor's own use).

**13.** Supra note 12.

**14.** Cal.Probate Code § 583 [West 1981].

**15.** Supra note 11; see also *In Re Ettlinger's Estate,* supra note 11.

relationship of the bidders to the executrix. The heir cited *Strudthoff v. Yates,*[16] a case involving a prohibited sale to a spouse.[17] The trial court overruled the objection and approved the sale. The appellate court stated that *Strudthoff* was no authority for the heir's claim because the evidence indicated that the executrix never directly or indirectly acquired any title to the property. The court stated that "[t]he mere relationship of the bidder here involved, alone, would not necessarily, in and of itself, force a finding that the sale should be voided."[18] The court noted that "[n]ear relationship between the representative and the purchaser does not compel an inference of fraud, but is merely a circumstance to be carefully considered with the other circumstances in the case."[19]

The heirs stress that the trust statutes—60 O.S.1981 § 175.11[20]—and the probate statutes—58 O.S.1981 § 496[21]—are *in pari materia.* Since the trust self-dealing statute specifically prohibits a trustee's sale to a "relative" (including sibling), the heirs argue that the probate self-dealing statute should be similarly construed.

We find this argument unpersuasive. Although trustees and executors are both fiduciaries, they are separate and distinct legal creatures, with different powers and different duties.[22] An executor's duties are limited to winding up the estate of the decedent *under court supervision.* They are temporary in character.[23] Many of the powers and duties which are applicable to trustees do not apply to executors. The procedures by which to enforce those duties and the nature and extent of their liability to third persons differ.[24] If the same person is both an executor and a trustee, his powers and duties as an executor are separate and distinct from those of a trustee.[25]

Generally, statutes relating to the same class of persons or things or which have a common purpose should be viewed as *in pari materia.*[26] The trust and probate statutes do not relate to the same class of persons or things and have different purposes. They are hence not *in pari materia.*[27] Since a trustee's powers are broader than an executor's, it is not inconsistent that his duties and liabilities under the first self-dealing statute should be broader as well.

We reject the heirs' argument and adopt the general rule that near-relationship between the executor and the purchaser will not, alone, void the transfer. It is a circumstance to be carefully considered with all the other circumstances in the case.[28] We

---

**16.** 28 Cal.2d 602, 170 P.2d 873 [1946].

**17.** As in Oklahoma, a sale to a spouse is prohibited in California as a violation of the statute. *Strudthoff v. Yates,* supra note 16.

**18.** *In Re Denlinger's Estate,* supra note 15.

**19.** *In Re Denlinger's Estate,* supra note 15 at 496.

**20.** See text of 60 O.S.1981 § 175.11 in footnote 3.

**21.** See text of 58 O.S.1981 § 496 in footnote 2.

**22.** The Restatement clearly states that an executor is not a trustee. Restatement (Second) of Trusts § 6 at pp. 18–21 [1959]. See also A. Scott, *Scott on Trusts,* Vol. 1 § 6 at pp. 56–63 [3d ed. 1967]; G. Bogert, *The Law of Trusts and Trustees,* § 12 at pp. 42–58 [2d ed. 1967]; Note, 52 Marquette L.Rev. 303 [1968].

**23.** Restatement (Second) of Trusts § 6 at page 19 [1959]; A. Scott, *Scott on Trusts,* supra note 22 at 58, see also, G. Bogert, *The Law of Trusts and Trustees,* supra note 22 at 47.

**24.** A. Scott, *Scott on Trusts,* supra note 22 at 56. See also G. Bogert, *The Law of Trusts and Trustees,* supra note 22.

**25.** *In Re Cook's Trust,* 192 Okl. 291, 135 P.2d 492, 494 [1943]; *Mahoney v. McBirney,* 184 Okl. 75, 84 P.2d 600, 601 [1938].

**26.** *DeGraffenried v. Iowa Land Trust Co.,* 20 Okl. 687, 95 P. 624, 639 [1908]; *State v. Phillips Petroleum Co.,* 189 Okl. 629, 118 P.2d 621, 625 [1941].

**27.** See e.g. *Tooahnippah v. Hickel,* 397 U.S. 598, 606, 90 S.Ct. 1316, 1321, 25 L.Ed.2d 600 [1970].

**28.** Some jurisdictions hold that in transactions involving a near-relative, the burden of proof of loyalty rests with the fiduciary. See *In Re Minch's Will,* supra note 11; *In Re Segal's Estate,* 170 Misc. 673, 11 N.Y.S.2d 306, 310 [Surr.Ct.1939]; *In Re Equitable Office Bldg. Corp.,* 83 F.Supp. 531, 565 [S.D.N.Y.1949], rev'd on other grounds, 175 F.2d 218 [2d Cir. 1949]. We are not called upon to decide that point today.

think this is the wisest approach and that it best accords with the conflict-of-interest analysis we have used in those cases involving exceptions to § 496.[29]  We hold that 58 O.S.1981 § 496 does not prohibit an executor from selling property of the estate which he represents to his sister, where the sale is not otherwise subject to objection. Since our answer to the first question is in the negative, we next pass to consider the third question certified.

## II.

### OFFSET OF MONEY RECEIVED BY EXECUTOR

■ The terms of 58 O.S.1981 § 492 provide that an executor who fraudulently sells any real estate of a decedent is liable in ". . . double the value of the land sold, as liquidated damages, to be recovered in an action by the person having an estate of inheritance therein."  When a plaintiff does not seek to set aside the sale but seeks only money damages, in computing the damages to be awarded under the statute the executor should be given credit for the amount of money received by the estate from the sales.

In *Shawnee National Bank v. Van Zant*,[30] the executor brought an action under Section 6324, R.L. 1910 (now 58 O.S.1981 § 292) which provides that any person before the granting of letters of administration, who embezzles or alienates any of the property of the decedent, will be liable for double the amount of the property alienated.[31]  In that case, this court held that the executor was entitled to offset the amount of proceeds used in paying the legitimate debts of the estate against his personal liability under the statute.  The court noted that to the extent the executor applied proceeds to pay debts of the deceased, he did not convert property to his own use, but used it to benefit the estate.[32]

If the heirs here sought to set aside the conveyance, they would be compelled to refund all of the purchase money distributed through the estate or used to pay necessary expenses of the estate.  An heir is required to do equity as a condition precedent to relief.  If he repudiates a sale, he must offer to restore whatever benefits he may have received from the sale.[33]

The form of relief a plaintiff chooses should not dispense with the requirement that he do equity.  To the extent the estate actually received money from the sale of the property, the executor should receive credit.

## III.

### DAMAGES UNDER § 492

■ The heirs contend that 58 O.S.1981 § 492 is remedial in nature and that, under appropriate circumstances, they are entitled to recover punitive damages in addition to the "liquidated damages" provided for by statute.[34]  They argue that the statute was

---

29. See supra note 5 and cases cited therein.

30. 84 Okl. 107, 202 P. 285 [1921], *overruled on other grounds; Hembree v. Magnolia Petroleum Co.,* 176 Okl. 524, 56 P.2d 851 [1935].

31. The terms of 58 O.S.1981 § 292 provide: "If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the monies, goods, chattels or effects of a decedent, he is chargeable therewith, and liable to an action by the executor or administrator of the estate, for double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate."

32. *Shawnee National Bank v. Van Zant,* supra note 30, 202 P. at 290, quoting *Rutherford v. Thompson,* 14 Or. 236, 12 P. 382 [1886].

33. *Chastain v. Pender,* supra note 6; *Hammert v. McKnight,* 132 Okl. 14, 269 P. 289, 291 [1928].

34. In support of their proposition the heirs cite *Shawnee Nat'l Bank v. Van Zant,* supra note 30, and *Hembree v. Magnolia Petroleum Co.,* supra note 30.  In *Van Zant,* the heirs brought suit under Section 6324, R.L. 1910 (now 58 O.S.1981 § 292, cited in full supra note 31) which provided for double damages in case of embezzlement.  The court there stated that the statute did not give the administrator a new right of action nor create a new remedy because the administrator could sue for conversion irrespective of the statute.  Therefore, the court stated that the statute was remedial and merely increased the quantum of damages recoverable for wrongful conversion.  The heirs argue by analogy that § 492 is also remedial.

not enacted to punish an executor and that it does not serve as a substitute for punitive damages. We are urged that the statute should be construed in the vernacular of contract law and that the use of the term "liquidated damages" indicates that the legislature intended the statute to be merely compensatory in nature.

The executor argues that the statute is penal in nature and that therefore punitive damages are not otherwise allowable. Both submit that the issue turns on whether the statute is penal or remedial.

Because of the different shades of meaning attributed to the words "penal" and "remedial" and because, in any case, a statute can be both penal and remedial, we decline to decide this question in those terms.[35] We hold instead that the double damages imposed by § 492 are *punitive liquidated damages* and that additional punitive damages may not be recovered. Our discussion hence focuses on the punitive nature of § 492 liquidated damages.

In *Weihe v. Statham*,[36] a California case, the court considered a statute substantially similar to 58 O.S.1981 § 492,[37] imposing double liability on an executor for a fraudulent sale. California also had a statute exactly like 58 O.S.1981 § 491 which makes a surety liable for actual damages caused by the neglect or misconduct of an executor in making the sale.[38] The heirs in *Weihe* were suing both the executor and the surety under the fraudulent sale statute. The court pointed out the distinction between the two statutes and noted that the statute prohibiting fraudulent sales does not impose double liability on a surety. The distinction was explained further in a later California

---

We do not find the *Van Zant* case persuasive. Although this court did there state that § 292 is remedial, that does not preclude the damages from also being a penalty. In fact, later in *Nichols & Shepard Co. v. Dunnington,* 118 Okl. 231, 247 P. 353, 355 [1926] we called the § 292 double damages "a penalty". Additionally, the rationale in *Van Zant* is particularly suspect. The court there relied on the California case of *Beckham [sic] v. McKay,* 14 Cal. 251 [1859], construing a California statute exactly like § 292. (The correct name of the statute in concern is now Cal.Prob.Code § 612, the case is *Beckman v. McKay,* 14 Cal. 251 [1859]). The court cited *Beckman* as holding that the California statute was remedial. The *Beckman* case held just the opposite—14 Cal. at 253—that the statute was penal. Another California case, *Jahns v. Nolting,* 29 Cal. 508, 513 [1866] held thereafter that the statute was remedial. Later in *Hochwender v. Carter,* 45 Cal.App.2d 435, 114 P.2d 401, 402 [1941], the California Court of Appeals held that the statute imposed a penalty. This court's treatment of § 292 has been similarly confusing. Because § 292 has been subject to this checkered interpretation, we see no benefit in attempting to analogize it to § 492.
See text of 58 O.S.1981 § 492 in footnote 37.

**35.** For a discussion of the penal/remedial distinction in the international-law sense, see *Tulsa Ready-Mix Concrete Co. v. McMichael Concrete Co.,* Okl., 495 P.2d 1279, 1282 [1972]; *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 227–228, 36 L.Ed. 1123 [1892]. This court has repeatedly recognized that a statute may be penal in some aspects and remedial in others. *Tulsa Ready-Mix Concrete Co. v. McMichael Concrete Co.,* supra; *Franklin Drilling*

*Co. v. Jackson,* 202 Okl. 687, 217 P.2d 816, 818–819 [1950]; *Watkinson v. Adams,* 187 Okl. 432, 103 P.2d 498, 500 [1939]. The distinction is not helpful here.

**36.** 67 Cal. 245, 7 P. 673 [1885].

**37.** The California Statute, Section 1572 of the Code of Civil Procedure (now Cal.Prob.Code § 792) provides in full: "Any executor or administrator who fraudulently sells any real estate of a decedent contrary to, or otherwise than under, the provisions of this chapter, is liable in double the value of the land sold, as liquidated damages, to be recovered in an action by the person having an estate of inheritance therein."
Section 492 of the Oklahoma Probate Code (58 O.S.1981 § 492) provides exactly the same: "Any executor or administrator who fraudulently sells any real estate of a decedent, contrary to or otherwise than under the provisions of this chapter, is liable in double the value of the land sold, as liquidated damages, to be recovered in an action by the person having an estate of inheritance therein."

**38.** 58 O.S.1981 § 491 provides in full: "If there is any neglect or misconduct in the proceedings of the executor or administrator in relation to any sale, by which any person interested in the estate suffers damage, the party aggrieved may recover the same in an action upon the bond of the executor or administrator or otherwise." Section 1571 of the California Code of Civil Procedure (now Cal.Prob.Code § 759) is exactly the same.

case, *Hochwender v. Carter.*[39] There the court noted that the California Probate Code imposes liability under several sections for actual injury resulting from failure to file an inventory,[40] from failure to give notice to creditors,[41] and for actual damages caused by any neglect or misconduct in connection with the sale of property.[42] Oklahoma has similar provisions imposing liability on the surety as well as the executor.[43]

The court in *Hochwender* noted that only two sections in the probate code impose double liability. One is § 792—exactly like Oklahoma's § 492—which casts liability upon the executor for double the value of the land sold "as liquidated damages." Referring to *Weihe v. Statham,* the court noted that while § 759 (similar to our § 491) of the probate code makes a surety liable for actual damages from neglect or misconduct, § 792 imposed liability on the executor only, without specifically including the surety.

The other California statute imposing double liability is § 612—exactly like Oklahoma's § 292. That section provides for double liability against any person who embezzles property of the decedent prior to the granting of letters of administration,[44] although liability is not specifically imposed on the surety. As in *Weihe,* the heir in *Hochwender* was suing both the executor and his surety to recover double damages under the statute. The court explained that the fact that liability is not specifically imposed on the surety in the two sections involving fraud, while it is in those sections involving neglect or misconduct, indicates that it was not intended to apply to the surety. The court stated that a "very real distinction appears in that in every section

of the probate code involving actual damages caused by the act of an executor, liability is imposed also upon his surety, while in both cases imposing double liability on account of the fraudulent acts of an executor the liability is not by the terms of the statute extended to the surety."[45] The Oklahoma Probate Code contains this same distinction. The court then discussed the policy behind the distinction:[46]

"Not only does this appear to be the intention of the legislature as expressed in these statutes, but there are good reasons why this should have been done. The bond being conditioned that the executor will faithfully perform his trust, it is logical and reasonable to impose liability upon the surety for his accounting for what comes into his hands, to secure the return of any assets of the estate which he takes or conceals, and for any actual damage caused by his neglect or his misconduct. But something going beyond this, imposing double liability, is in the nature of a penalty imposed upon the wrongdoer as a punishment for his act, and possibly as a warning to others, whether it is called a penalty or liquidated damages. Such double liability has only been imposed in those cases involving actual fraud as distinguished from neglect or misconduct. While such a punishment may well be imposed on the guilty party it would hardly be logical to impose it upon his bondsman who is not at fault, who is himself a victim of the same fraud, and who is already obligated to return the amount wrongfully taken."

Similarly, public policy prohibits insurance protection for punitive damages. In *Dayton Hudson Corp. v. American Mutual*

---

**39.** Supra note 34.

**40.** Cal.Prob.Code § 610 [West 1981].

**41.** Cal.Prob.Code § 955 [West 1981].

**42.** Cal.Prob.Code § 759 [West 1981].

**43.** 58 O.S.1981 § 288 (liability for failure to file an inventory); 58 O.S.1981 § 598 (liability for failure to give notice to creditors); 58 O.S.1981 § 491 (liability for actual damages caused by neglect or misconduct in the sale of property).

**44.** See footnote 31 for text of 58 O.S.1981 § 292.

**45.** *Hochwender v. Carter,* supra note 34, 114 P.2d at 402.

**46.** *Hochwender v. Carter,* supra note 34, 114 P.2d at 402.

*Liability Insurance Company,*[47] we noted that because punitive damages are to punish and deter, insurance against them would contravene this policy.

We find that this legislative distinction is more significant than the use of the term "liquidated damages". Even in contract law, the use of the term is not determinative.[48] Oklahoma allows for liquidated damages where it would be extremely difficult to determine the amount of actual damage.[49] The legislature certainly could not, as the heirs argue, have been using the term in the vernacular, since in § 492 the amount of "liquidated damages" depends upon the amount of actual damages. Where, as here, the amount of actual damage is uncertain, this court held a provision for liquidated damages is in fact a penalty.[50]

The specific exclusion of the surety's liability from the two double damage statutes indicates that the legislature recognized that the double liability imposed is in the nature of a penalty.[51] Punishment of the wrongdoer and deterrence of others is the object of multiple damages. This is also the classic purpose of punitive damages.[52] The double liability imposed on an executor by § 492 is for punitive liquidated damages.[53] If an heir recovers under this statute he cannot also recover additional punitive damages.

BARNES, C.J., and IRWIN, HODGES, LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

**47.** Okl., 621 P.2d 1155, 1158 [1980].

**48.** *Mid-Continent Life Ins. Co. v. Goforth,* 193 Okl. 314, 143 P.2d 154, 159 [1943].

**49.** *Waggoner v. Johnston,* Okl., 408 P.2d 761, 769 [1965].

**50.** *Mid-Continent Life Ins. Co. v. Goforth,* supra note 48.

**51.** While a provision for double damages does not automatically render a statute penal, in most cases where this court has examined a statute providing for multiple damages, we have determined that they are in the nature of a penalty. *See Nichols & Shepard Co. v. Dunnington,* supra note 34 at 355; *Crow v. Davidson,* 186 Okl. 84, 96 P.2d 70, 72 [1939]; *State v.*

*Board of Education of Ind. School Dist. No. 74,* 206 Okl. 699, 246 P.2d 368, 373 [1952]; *Western Union Telegraph Co. v. Coyle,* 24 Okl. 740, 104 P. 367, 369 [1909].

**52.** See *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* supra note 47, 621 P.2d at 1160.

**53.** Other jurisdictions recognize the concept of punitive liquidated damages. See generally *Stringer v. Griffin Grocery Co.,* 149 S.W.2d 158, 161 [Tex.App.1941]; *Duke v. Helena-Glendale Ferry Co.,* 203 Ark. 865, 159 S.W.2d 74, 77 [1942]; *Whatley v. Love,* 13 So.2d 719, 722 [La.App.1943]; *Jeansonne v. Marath,* 61 So.2d 598, 600 [La.App.1952].